Catherine B. RAMSEY,
Plaintiff-Appellee,

v.

Charles H. CULPEPPER and The
Farmington Investment Company,
Defendants-Appellants.

No. 82–2135.

United States Court of Appeals,
Tenth Circuit.

July 5, 1984.

Charles E. Stuckey, Modrall, Sperling, Roehl, Harris & Sisk, Albuquerque, N.M. (George T. Harris, Jr., Modrall, Sperling, Roehl, Harris & Sisk, Albuquerque, N.M., with him on the brief), for defendants-appellants.

Steven L. Tucker, Jones, Gallegos, Snead & Wertheim, Santa Fe, N.M., for plaintiff-appellee.

Before BARRETT, DOYLE and McKAY, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

This is an action which originally was filed by the appellee herein in the United States District Court for the District of New Mexico. The defendant Charles Culpepper is a realtor, and operates a real estate office, which is also a party to this action. The action alleges breach of fiduciary duty in connection with the negotiation of a lease on plaintiff's behalf. Below the realtor moved for summary judgment on the basis that the action was precluded by the applicable statute of limitations. The trial court denied the motion and the case was tried to a jury. The jury returned a verdict for the plaintiff in the amount of $76,860.00, together with $25,000 in punitive damages. Judgment was entered on these sums and we are called upon to review the proceedings in the district court.

The plaintiff Catherine Ramsey is a retired school teacher and librarian. For many years before her retirement she lived in Farmington, New Mexico. In the late 1930's she acted on the advice of her aunt and acquired four lots on the outskirts of Farmington, New Mexico. She erected a building on the four lots in 1948 at the request of a local businessman who wished to use the lots for a car dealership. He arranged the details concerning the building and paid Mrs. Ramsey a monthly rental of $600. In the early 1960's Mrs. Ramsey bought two adjoining lots in order to own a complete ½ block of commercially zoned property. At that time the area of Farmington had grown and her property was in the middle of downtown. She continued to rent the property at $600 per month until 1970, when the successor to the car dealership relocated.

Charles Culpepper, the defendant-appellant, learned that the property would be vacated in 1970 and contacted Mrs. Ramsey in Florida. He advised her that he would like to act as her rental agent. She had a long-time acquaintance with Mr. Culpepper's father and she had taught Mr. Culpepper in school. Based on that acquaintance she retained him to represent her in leasing the property. She left the arrangements to his discretion, because she was unschooled in business matters and knew little about the Farmington rental market.

Mr. Culpepper negotiated with Sears, Roebuck and Company for the lease of the property and actually offered the property to Sears "as is" for $600 per month. Sears responded that it required remodeling of the building. Culpepper told Mrs. Ramsey this and she authorized him to make the necessary changes. Culpepper reached an agreement with Sears which provided for a five year term at a monthly rental of $600, with remodeling. Under the agreement Mrs. Ramsey would pay $12,500 towards the remodeling and pay all taxes and insurance for the building. The agreement also gave Sears an option for an additional five years at the same rent. Culpepper told Mrs. Ramsey "this is the best I can do." He forwarded the lease to her for her approval and she signed it.

Sears exercised its option in 1974, and it sought additional options. Apparently, the realtor prepared a new document granting Sears two additional five year options at the same monthly rate. Although plaintiff does not remember signing the form, the document apparently bears her signature.

On March 10, 1980, Sears renewed the lease for another five years at the $600 per month rent. On March 17, 1980, obviously unaware of Sears' renewal, Mrs. Ramsey wrote to Mr. Culpepper, indicating that because Sears was moving out and Mr. Culpepper did not have time to search for a new tenant, she wished to close her account with the Farmington Investment Company. Culpepper then informed Mrs. Ramsey that Sears had exercised its option, and would remain on the property at a monthly rent of $600 until at least 1985. She was surprised and upset to learn of this.

In 1981 Plaintiff Ramsey brought this negligence and fraud action against the realtor, Mr. Culpepper and his realty office. She alleged that the realtor had breached his fiduciary duty to her in failing to ascertain the fair rental value of the property, in requiring her to make improvements without any enhancement of the rental rate, in failing to escalate the rental rate over the term of the lease, and in failing to advise her or protect her interests as to the agreement to extend the lease for additional terms.

On appeal Culpepper maintains that the trial court erred in a number of respects. He alleges that the court should have granted his motion for a directed verdict, which alleged that the plaintiff's claim was barred by the statute of limitations and; that the trial court's instructions to the jury on applicable standards in connection with the statute of limitations were erroneous; that there was inadequate evidence to allow the issue of punitive damages to be submitted to the jury; that the trial court erred in admitting evidence of the financial condition of the defendant; that the trial court improperly allowed plaintiff's counsel to discuss punitive damages in his rebuttal argument; and that the trial court erred in admitting the testimony of one of plaintiff's proffered experts. Defendant claims that these errors demand a reversal in this case.

1. WHETHER THE STATUTE OF LIMITATIONS BARRED THE ACTION?

The argument of Culpepper is that the New Mexico statute of limitations period applicable to claims of constructive fraud and negligence is four years. In cases of fraud, the limitations period begins running when the plaintiff discovers the fraud or when, with reasonable diligence, the plaintiff could have discovered the fraud. According to Culpepper, plaintiff testified at trial that in 1975 she first learned that a rent escalation clause would be advanta-

geous to her but was not in her lease with Sears. It is Culpepper's position that plaintiff had four years from learning this to bring her claim. The limitations period allegedly ended sometime in 1979, but plaintiff did not file this action until January 1981. From this Culpepper maintains that the court should have granted his motion for a directed verdict, on the ground that the action was barred by the statute of limitations.

Mrs. Ramsey argues that in 1975 she learned that escalation clauses benefit lessors, but she knew little about the circumstances surrounding the lease at issue. She relied on defendant's representations that the lease as written was the best he could obtain. She claims that she first discovered the inadequacy of the lease when she learned in 1980 that Culpepper had extended the agreement, without any rent enhancement, until 1990. She contends that the issue of when she discovered the cause of action is in dispute and was properly left to the jury's determination.

 It is true that in New Mexico, a cause of action based upon fraud and negligence is subject to a four year statute of limitations. N.M.Stat.Ann. § 37–1–4 (1978). Both causes of action, however, are subject to equitable tolling. The New Mexico doctrine of fraudulent concealment provides:

> [W]here a party against whom a cause of action accrues prevents the one entitled to bring the cause from obtaining knowledge thereof by fraudulent concealment, or where the cause is known to the injuring party, but is of such character as to conceal itself from the injured party, the statutory limitation on the time for bringing the action will not begin to run until the right of action is discovered, or, by the exercise of ordinary diligence, could have been discovered.

*Hardin v. Farris*, 87 N.M. 143, 530 P.2d 407, 410 (1974) (citations omitted). The

fraudulent concealment doctrine is codified as to fraud actions in the New Mexico statutes,[1] but applies equally to causes of action grounded in negligence. *Hardin, supra.*

 In most cases, defendant must have made some affirmative false representation to justify the invocation of the fraudulent concealment doctrine. "However, in a confidential relationship where there exists a duty to speak, ... mere silence constitutes fraudulent concealment." *Hardin*, 530 P.2d at 410. Moreover, the false statement or omission by a defendant who has a special relationship with the plaintiff may also constitute constructive fraud.

> Generally speaking constructive fraud is a breach of a legal or equitable duty which the law declares fraudulent *because of its tendency to deceive others.* Such fraud may be present on the part of the fraud feasor *without any showing of dishonesty of purpose or intent to deceive*

*Gaston v. Hartzell*, 89 N.M. 217, 549 P.2d 632, 634 (1976) (*quoting Barber's Super Markets, Inc. v. Stryker*, 84 N.M. 181, 500 P.2d 1304, 1309 (1972)) (emphasis in original). In cases in which the false statement or omission also constitutes constructive fraud, "[i]rrespective of the good faith with which a false representation is made, if it is justifiably relied on by the purchaser, he has no duty to make inquiries or examination of the misrepresentation, unless he had knowledge of his own or of facts which should arouse suspicion and cast doubt upon the truth of the statement made." *Gaston*, 549 P.2d at 634.

 There can be no question that in the case at bar Culpepper was acting in a fiduciary capacity on behalf of Mrs. Ramsey and as we pointed out before, she was extremely dependent upon him. Under those circumstances he had a duty to repre-

---

1. N.M.Stat.Ann. § 37–1–7 provides:
 In actions for relief, on the ground of fraud ... the cause of action shall not be deemed to have accrued until the fraud ... complained of, shall have been discovered by the party aggrieved.

The New Mexico courts have held that this statute applies to cases of both actual and constructive fraud. *Gaston v. Hartzell*, 89 N.M. 217, 549 P.2d 632 (1976).

sent her best interests. Without particular knowledge raising questions as to his competency or sincerity, Mrs. Ramsey had no obligation to inquire into the propriety of his actions on her behalf. She relied on his representations that the Sears lease was "the best he could do." If this statement was untrue, then Ramsey's cause of action did not accrue until she learned of the inadequacy of the Sears rental arrangement. Therefore the question before the trial judge was whether, as a matter of law, Mrs. Ramsey's knowledge in 1975 of the existence and desirability of escalation clauses constituted discovery such that the statute of limitations began to run.

The trial court refused to hold as a matter of law that the statute of limitations had run and instead submitted to the jury the question of when Mrs. Ramsey discovered the fraud, after which the limitations period would begin to run. Our view is that the trial court's decision was proper, and we affirm the court's denial of defendant's motion for a directed verdict.

In a case of this nature "a directed verdict is proper only where the evidence and all the inferences to be drawn therefrom are so patent that minds of reasonable [people] could not differ as to the conclusions to be drawn therefrom." *Sandoval v. U.S. Smelting, Refining & Mining Co.*, 544 F.2d 463, 464–65 (10th Cir. 1976) (*quoting Taylor v. National Trailer Convoy, Inc.*, 433 F.2d 569 (10th Cir.1970)). Therefore, in reviewing the denial of a motion for a directed verdict, the appellate court must review the evidence in the light most favorable to the plaintiff. So viewed, we cannot rule that the evidence unequivocally shows that Mrs. Ramsey discovered the alleged fraud in 1975.

Mrs. Ramsey testified that "I found out that an acceleration clause was very often written into the rent and I should be getting more rent." The question is whether this alone is sufficient to establish that, as a matter of law, Mrs. Ramsey was on notice of the fraud. The absence of an escalation clause in a lease is not conclusive proof of an unfair lease. Rental markets and lease terms vary and the absence of an escalation clause may be justified by a depressed rental market or an alternative advantageous lease term. Only a person knowledgeable about the Farmington Rental market and the negotiations and contract terms could determine with confidence whether the absence of an escalation clause indicated some negligence or fraud on the part of the negotiating agent. Certainly Mrs. Ramsey was shown to have relied on defendant's information. Mrs. Ramsey was not familiar with business practices in the Farmington market. She did not live in Farmington and knew little about the development of the downtown area that had occurred since she left. She relied on Culpepper to keep her advised and serve her interests. He had told her that the Sears lease was the best he could do and she believed him. In view of the fact that she lived far away from Farmington and he was her only source of information, this is adequate evidence to create a question of fact for the jury as to whether or not she relied upon him and as to whether she should have suspected fraud or negligence or both. Where such a question is involved, the question of what a reasonable person would have done is generally within the province of the jury. *Wolf v. Preferred Risk Life Ins. Co.*, 728 F.2d 1304 (10th Cir.1984). *See also Aldrich v. McCulloch Properties, Inc.*, 627 F.2d 1036, 1042 (10th Cir.1980) ("[t]he question of whether a plaintiff should have discovered the basis of his suit under the doctrine of equitable tolling does not lend itself to determination as a matter of law"). Thus, the trial court properly denied Culpepper's motion for a directed verdict, and correctly submitted the issue to the jury.

2. DID THE TRIAL COURT ERR IN EXPLAINING TO THE JURY THE STANDARDS APPLICABLE TO THE STATUTE OF LIMITATIONS ISSUE?

The position of Culpepper is that the trial court erred in instructing the jury in the following manner:

The Defendants deny Plaintiff's claims and raise the defense of statute of limitations. Defendants have the burden of

proving the following essential elements of their defense:

1. As to Plaintiff's claim of negligence, that the acts which Plaintiff asserts as negligent, were discovered by her more than four years prior to the filing of this lawsuit;

2. As to the Plaintiff's claim of constructive fraud, that the acts which Plaintiff asserts were fraudulent, were discovered by her more than four years prior to the filing of this lawsuit.

The defendant contends that this instruction is erroneous since it failed to recognize that the cause of action accrues when it is discovered or when, with reasonable diligence, it *should* have been discovered. *Romero v. Sanchez*, 83 N.M. 358, 492 P.2d 140 (1971). The trial court is said to have failed to instruct the jury on this second part of the test. The defendant also objects to other instructions because they allegedly place the burden on defendants to prove that the statute of limitations was not tolled. According to the defendant, plaintiff has the burden of proving fraudulent concealment that will toll the statute of limitations.

The instructions quoted above were not the only instructions given to the jury on the statute of limitations. There was in addition a lengthy and deep instruction on

this issue.[2] The instructions which appear in the note accurately state the law of fraudulent concealment in cases of a fiduciary relationship. All the instructions, taken as a whole, make clear that the burden is on the plaintiff to prove fraudulent concealment. Moreover, the instructions taken as a whole informed the jury that although the plaintiff does not have a duty to inquire into the statements of the defendant fiduciary, the statute of limitations begins to run when the plaintiff learns of facts that should arouse her suspicion about the defendant's statements or non-disclosures. The critical instructions come almost verbatim from *Gaston v. Hartzell, supra,* which controls this case. Taken as a whole, the instructions state the law which governs and provided the jury with an ample understanding of the issues and the standards applicable. *See Durflinger v. Artiles,* 727 F.2d 888, 895 (10th Cir.1984).

In summary it is our conclusion that there was no reversible error in the trial court's instructions to the jury.

3. WAS THERE SUFFICIENT EVIDENCE TO JUSTIFY THE SUBMISSION OF THE PUNITIVE DAMAGES ISSUE TO THE JURY?

The contention of Culpepper is that, at most, he was negligent in the performance

---

**2.** The trial court further instructed the jury that:

In New Mexico the applicable statute of limitations for Plaintiff's claims of constructive fraud and negligence is four years. That is, Plaintiff is barred from bringing a cause of action based upon constructive fraud or negligence after four years from the date of the occurrence of the alleged wrongful acts or omissions *unless she can show fraudulent concealment by the Defendants.* Since Plaintiff filed this action on January 20, 1981, she is barred from recovering for wrongful acts or omissions which occurred prior to January 20, 1977, unless you also find fraudulent concealment.

Fraudulent concealment consists of a false or incorrect representation or a failure to disclose material facts not necessarily involving evil intent or dishonesty where a duty to disclose exists. If there is a fraudulent concealment, then the statute of limitations does not begin to run until the date the cause of action is discovered by the Plaintiff.

If you find that Defendants made a false or incorrect statement to Plaintiff, or failed to disclose material facts, and Plaintiff justifiably relied thereon, then Plaintiff had no duty to make inquiries or an examination of the misrepresentation. However, *if you find that Plaintiff had knowledge of her own, or facts, which should have aroused her suspicion and cast doubt upon the false statement or non-disclosure, then she was under a duty to exercise due diligence to discover the constructive fraud, or negligence, of Defendants. The statute of limitations began to run at that time, if, by exercising due diligence, Plaintiff could have discovered her cause of action.*

The law does not require one to suspect or mistrust her fiduciary. This is so because a fiduciary relationship by its nature gives a confiding party the right to rely on the good faith of the other party and on his duty to disclose all facts material to the relationship and to the purpose for which the fiduciary relationship was created.

(emphasis supplied).

of his duties on Mrs. Ramsey's behalf, and that mere negligence does not support an award of punitive damages. It is his further contention that there was no evidence of wanton, willful or fraudulent conduct, and that the trial court ought to have granted his motion for a directed verdict on the punitive damages claim, withdrawing it from the jury.

Under New Mexico law, some circumstances allow the recovery of punitive damages against a real estate broker who has violated his or her fiduciary duty. *Robison v. Katz*, 94 N.M. 314, 610 P.2d 201, at 208 (1980). Mere negligence is inadequate to establish liability for punitive damages. Instead, "[p]unitive or exemplary damages may be awarded only when the conduct of the wrongdoer may be said to be maliciously intentional, fraudulent, oppressive, or committed recklessly or with a wanton disregard of the plaintiffs' rights." *Loucks v. Albuquerque Nat'l. Bank*, 76 N.M. 735, 418 P.2d 191, 199 (1966); *Robison v. Katz*, 610 P.2d at 208. The failure of a realtor to disclose important information to a fiduciary, if willful or wanton, can be the basis for a punitive damages award. *Newcum v. Lawson*, 100 N.M. 512, 672 P.2d 1143 (1983).

There is ample evidence from which a juror could reach the conclusion that Culpepper recklessly and intentionally misled Mrs. Ramsey so that she would accept the Sears lease and options. Her experts testified that the lease terms accepted by Culpepper on the Sears lease were not competitive with other terms in commercial leases in downtown Farmington. Culpepper admitted that he accepted most of Sears' terms, and never negotiated with Sears the amount of rent or responsibility for taxes and insurance. Mr. Culpepper admitted that he never sought any other tenant for Mrs. Ramsey's building. Notwithstanding all this, Culpepper reported to Mrs. Ramsey that the Sears lease was the "best he could do." Culpepper admitted at trial that he knew in 1974 that $600 was an insufficient rent for Mrs. Ramsey's building, yet he drew up the documents to grant Sears two additional five-year options at that inadequate rent. He sent the documents to Mrs. Ramsey without informing her that the $600 rental was less than she should receive. He also admitted at trial that he and his family owned commercial property in downtown Farmington, and that Sears's presence downtown enhanced the values of downtown commercial property.

It is impossible to conclude that the $600 rental and the other terms of the contract were proper amounts and terms through all the years in question. The jury could, and obviously did, infer that Culpepper acted recklessly and with wanton disregard of Mrs. Ramsey's rights in reaching the various agreements with Sears. They could reasonably conclude that Mr. Culpepper wished to enhance the value of his property and receive a continuing commission from Mrs. Ramsey by ensuring that Sears rented her building for many years. Needless to say, the trial court properly denied defendant's motion for a directed verdict, and submitted the issue to the jury for its determination. The decision of the jury is not going to be disturbed.

4. DID THE TRIAL COURT ERR IN ADMITTING EVIDENCE OF DEFENDANT'S FINANCIAL CONDITION?

Culpepper maintains that evidence of a party's financial condition is generally not admissible. However, it is admissible for the purpose of fixing the amount of punitive damages. *Ruiz v. Southern Pacific Transp. Co.*, 97 N.M. 194, 638 P.2d 406 (1981). Culpepper objects to the admission of the evidence here because he claims plaintiff's request for punitive damages should have been rejected as a matter of law.

We have expressed our viewpoint that the punitive damage issue was properly before the jury. Therefore, the trial court acted within its discretion in admitting evidence of Mr. Culpepper's financial condition. *Ruiz, supra.*

### 5. DID THE TRIAL COURT ERR IN ALLOWING PLAINTIFF'S COUNSEL TO COMMENT ON PUNITIVE DAMAGES IN HIS REBUTTAL ARGUMENT?

Culpepper maintains that plaintiff's counsel addressed the question of punitive damages briefly in the primary closing argument, and again in the rebuttal. Defendant objects to this use of rebuttal time, because defendant's counsel did not discuss punitive damages in his closing argument. Culpepper maintains that argument on rebuttal should be restricted to answering the arguments put forth by the opposing party. Furthermore, the claim is made that although in his primary closing argument counsel for the plaintiff discussed punitive damages briefly, he improperly exceeded the scope of his primary closing argument in discussing punitive damages in great detail on rebuttal. Culpepper maintains that the trial court's failure to sustain his objections to plaintiff's use of rebuttal time constitutes prejudicial error and calls for reversal.

▉▉▉ We are aware that "appellate courts should exercise great caution in setting aside a judgment because of remarks made by counsel in closing argument during a hotly contested case, and even though the argument be improper, the judgment should not be disturbed unless it clearly appears that the remarks in question unduly aroused the sympathy of the jury and thereby influenced the verdict." *Julander v. Ford Motor Co.*, 488 F.2d 839, 842 (10th Cir.1973); *See also Franklin v. Shelton*, 250 F.2d 92, 99 (10th Cir.1957), *cert. denied*, 355 U.S. 959, 78 S.Ct. 544, 2 L.Ed.2d 533 (1958). Moreover, "[b]ecause the trial judge is in the best position to determine the effect that arguments of counsel have upon the jury, considerable discretion is given to the trial judge in exercising supervision over arguments of counsel." *Ward v. H.B. Zachry Const. Co.*, 570 F.2d 892, 895 (10th Cir.1978); *cf. Carlin v. Stringer*, 365 F.2d 597, 599 (10th Cir.1966) ("[s]upervision of oral argument is part of the procedural conduct of the trial and is primarily entrusted to the discretion of the trial court.")

▉▉▉ We are unable to conclude that, even though the particular argument might arguably have had some erroneous character, the argument constitutes prejudicial error. The award of punitive damages was a legitimate issue in the case based upon the evidence as a whole and it was raised in plaintiff's chief closing argument. The rebuttal argument consumed only a couple of minutes at the end of a full trial. The trial court was supervising the closing argument and apparently did not believe that the argument unduly aroused the sympathy of the jury. We cannot say that the trial court abused its discretion in allowing this brief discussion of punitive damages. Thus we reject defendant's contention that the plaintiff's use of rebuttal time requires reversal.

### 6. WAS IT ERROR TO REFUSE TO EXCLUDE THE TESTIMONY OF ONE OF PLAINTIFF'S EXPERT WITNESSES?

The defendant challenges the admission of the testimony of Dr. Thomas Simpson, an economist and mathematician, on the issue of plaintiff's damages. Dr. Simpson used a rental-value chart prepared by another of plaintiff's witnesses, Ms. Sutt, a real estate appraiser, to calculate the losses plaintiff incurred due to defendant's alleged failure to negotiate increasing rents during the period from 1970 to 1982. Defendant protests the admission of Dr. Simpson's testimony on the ground that Dr. Simpson was not knowledgeable about rental values of Farmington commercial property. Defendant claims that the information supplied by Ms. Sutt was unreliable, and not generally relied on by others in Dr. Simpson's field. According to the realtor, the trial court abused its discretion in admitting the evidence.

We do not accept this argument. Federal Rule of Evidence 702 allows expert testimony "if scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to deter-

mine a fact in issue." Federal Rule of Evidence 703 sets forth the facts upon which the expert may rely in forming an opinion.

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

██ Under Rule 703, there are three methods by which an expert may learn facts in order to reach an opinion. *First,* the expert may gather information by means of firsthand observation. *Second,* the expert may base his or her testimony upon facts presented at trial, either in the form of hypothetical questions propounded by counsel or evidence before the court. *Third,* the expert may rely on facts outside the record and not personally observed, but of the kind that experts in his or her field reasonably rely in forming opinions. *See* Fed.R.Evid. 703 advisory committee notes; J. Moore, Moore's Federal Practice § 703.-02 (2d ed. 1982). The trial judge has broad discretion in deciding whether to admit expert testimony, and the trial court's decision will be upheld unless it constitutes an abuse of discretion. *Sanchez v. Safeway Stores, Inc.,* 451 F.2d 998, 1000 (10th Cir. 1971).

██ The trial court did not abuse its discretion in admitting the testimony of Dr. Simpson. The computation of damages in this case involved complex mathematical principles, and the testimony of a mathmetician would help the jury on the issue of damages. Culpepper did not object to Dr. Simpson's qualifications as an expert. He objected to the basis of Dr. Simpson's opinion.

Dr. Simpson relied on rental figures already in evidence in making his calculations. Ms. Sutt, a Farmington real estate appraiser, had conducted a detailed survey of commercial properties in the Farmington area, and identified nine lease transactions that she believed were comparable to the one at issue. In her testimony she explained why she felt that the other nine properties were comparable to Mrs. Ramsey's building, and produced a chart which she had made comparing the nine properties. The chart was admitted into evidence without objection. Dr. Simpson used Ms. Sutt's figures to do the mathematical calculations to determine plaintiff's damages, based upon growth and inflation rates. He had no independent opinion about the rental value of Mrs. Ramsey's property; he merely reached a conclusion as to the likely value based upon facts in evidence.

The second method of reaching expert opinions set forth in Rule 703 describes this particular approach. The facts on which Dr. Simpson relied in reaching his expert opinion on damages were "made known to him at ... the hearing." The figures were admitted into evidence without objection. Culpepper cannot now contend that they are unreliable as a basis for an expert opinion on the question of damages. Even if the figures were inadmissible hearsay, the trial court properly noted that appraisers' compilations of rental figures for comparable buildings are reasonably relied upon by experts in computing real estate values and rental returns. Mr. Culpepper's complaints about Dr. Simpson's personal unfamiliarity with real estate values and the reliability of the figures underlying his opinion go to the weight of his testimony, not to its admissibility.

Our conclusion is that the contentions made herein do not give rise to a conclusion that there was reversible error in the trial. Indeed, it was a well conducted trial. Accordingly, the verdict of the jury must be approved and the judgment of the trial court should be and the same is hereby affirmed.