**Danny QUINTON, doing business as Quinton's Dairy; Louis Chaffin and Carrol Hayes, doing business as Hayes and Chaffin Dairy; and Bill Loftin, Plaintiffs–Appellees,**

v.

**FARMLAND INDUSTRIES, INC.,**
Defendant–Third–Party–
Plaintiff–Appellant,

v.

**WESTERN ARKANSAS EXPORT ELE-VATOR and Guthrie Cotton Oil Company, Third–Party–Defendants–Appellees.**

No. 89–7057.

United States Court of Appeals,
Tenth Circuit.

March 12, 1991.

**336**

Ray Hodnett, Fort Smith, Ark., and Dan George, Sallisaw, Okl., for plaintiffs-appellees.

Robert P. Redemann and Harold C. Zuckerman of Rhodes, Hieronymus, Jones, Tucker & Gable, Tulsa, Okl., for defendant-third-party-plaintiff-appellant.

Stephen C. Wilkerson of Knight, Wagner, Stuart & Wilkerson, Tulsa, Okl., for third-party-defendants-appellees.

Before ANDERSON, TACHA, and BRORBY, Circuit Judges.

BRORBY, Circuit Judge.

Plaintiffs commenced this strict liability action against defendant Farmland Industries, Inc. (Farmland) to recover damages allegedly incurred when their dairy cattle ingested a corn and pellet feed purchased from Farmland that contained an excessive and harmful level of cockleburs. Farmland subsequently filed a third-party complaint against Guthrie Cotton · Oil Co. (Guthrie) and Western Arkansas Export Elevator (WestArk), claiming that any contaminants alleged to have caused damage to plaintiffs' dairy herds derived from corn Farmland had purchased from Guthrie and WestArk. The district court directed a verdict in favor of the third-party defendants at the close of Farmland's evidence and subsequently entered judgment in favor of plaintiffs against Farmland in accordance with the verdict of the jury. Farmland appeals from both rulings.[1]

Farmland raises two issues on appeal in connection with the jury verdict for plaintiffs. First, Farmland contends the verdict was tainted by Dr. Mayes's expert testimony for plaintiffs, which was allegedly unqualified in two respects, i.e., "Mayes was generally unqualified to give expert toxicology opinions" because of a lack of education and experience concentrated on this specialty, Appellant's Brief at 5, and "Mayes was specifically unqualified to give opinions [on the particular issues in this case]" because of a lack of factual and/or scientific foundation for any such opinions, Appellant's Brief at 11.

 The district court is accorded broad discretion in its decision whether to admit expert testimony, which we may reverse only for an abuse of such discretion. *Ramsey v. Culpepper*, 738 F.2d 1092, 1101 (10th Cir.1984); *see Karns v. Emerson Elec. Co.*, 817 F.2d 1452, 1459 (10th Cir. 1987). Farmland's first objection to Dr.

---

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R. App.P. 34(a); 10th Cir.R. 34.1.9. Defendant-appellant's motion for oral argument is, accordingly, denied, and the case is ordered submitted without oral argument.

Mayes's testimony rests on the assumption that a doctor of veterinary medicine may not testify regarding the toxic effects of substances on dairy cows unless he is a specialist in the field of toxicology. This assumption about the insufficiency of general medical study, which reflects the implausible view that such training qualifies a doctor to diagnose and treat a wide range of physical disorders in the real world but not to render expert opinions about particular examples in the courtroom, has been expressly rejected in the case of physicians. *See Payton v. Abbott Labs,* 780 F.2d 147, 155 (1st Cir.1985) (fact that physician is not a specialist in the field in which he testifies does not affect the admissibility of his opinions but only their weight); *see, e.g., Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir.1987) (general physician may give opinion regarding patient's mental state even though not a psychiatrist); *Heinze v. Heckler,* 581 F.Supp. 13, 14 (E.D.Pa.1983) (same); *see also LeMaire ex rel. LeMaire v. United States,* 826 F.2d 949, 951–52 (10th Cir.1987) (cardiologist properly permitted to render neurological opinion over objection to qualifications). Farmland has cited no authority compelling a deviation from this approach in the present setting. The district court did not abuse its discretion in allowing Dr. Mayes's testimony over Farmland's objection to his professional qualifications.

■ Plaintiffs assert Farmland failed to preserve its second challenge to Dr. Mayes's opinions, regarding lack of adequate foundation, by limiting its trial objections to the matter of qualifications already discussed. After reviewing the transcript, *see* Trial tr. May 5, 11, and 12, 1989, at 30–38, 63, we agree that Farmland never specifically brought its separate foundational challenge to the district court's attention. *See generally Ramsey,* 738 F.2d at 1101 (recognizing distinction between challenges to foundation of and qualifications for expert opinion, and restricting analysis to former in accordance with limited scope of objection to expert's testimony). Under these circumstances, we review the matter only for plain error affecting the substantial rights of the parties,

*Bannister v. Town of Noble,* 812 F.2d 1265, 1271 (10th Cir.1987) (citing Fed.R. Evid. 103); *e.g., Big Horn Coal Co. v. Commonwealth Edison Co.,* 852 F.2d 1259, 1270–71 (10th Cir.1988) (plain error review of admission of expert testimony), although our conclusion would be the same under the abuse of discretion standard invoked above.

While Farmland was able to bring out on cross-examination some pertinent limitations regarding the extant research on cockleburs, for example its concentration on animals—other than dairy cows—that have more natural contact with the plant, these did not render inadmissible Dr. Mayes's extrapolations from the debilitating toxic and mechanical effects of the plant reported in the literature to the sick animals he examined. "[A] cause-effect relationship need not be clearly established by animal or epidemiological studies before a doctor can testify that, in his opinion, such a relationship exists. As long as the basic methodology employed to reach such a conclusion [here, Dr. Mayes's inquiries regarding course of symptomatology and concomitant changes in surrounding conditions, inspection of the allegedly harmful feed, physical examinations of sick animals, postmortem workups, review of pertinent scientific literature] is sound, ... products liability law does not preclude recovery until ... science has had the time and resources to complete sophisticated laboratory studies of the [alleged cause of injury]." *Wells v. Ortho Pharmaceutical Corp.,* 788 F.2d 741, 745 (11th Cir.) (quoting *Ferebee v. Chevron Chemical Co.,* 736 F.2d 1529, 1535–36 (D.C.Cir.), *cert. denied,* 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 432 (1984)), *cert. denied,* 479 U.S. 950, 107 S.Ct. 437, 93 L.Ed.2d 386 (1986); *see also Head v. Lithonia Corp.,* 881 F.2d 941, 943 (10th Cir.1989) (expert's opinion need not be generally accepted in scientific community to be sufficiently reliable and probative to support a jury finding); *Peteet v. Dow Chem. Co.,* 868 F.2d 1428, 1433 (5th Cir.) (same), *cert. denied,* —— U.S. ——, 110 S.Ct. 328, 107 L.Ed.2d 318 (1989). Farmland's challenge to the research basis for

Dr. Mayes's opinions goes to their weight, not their admissibility. *See Payton,* 780 F.2d at 156.

■ The same conclusion applies to Farmland's challenge to the factual foundation of Dr. Mayes's opinion. While Dr. Mayes's information regarding plaintiffs' respective herds may not have been as complete as it could have been, the knowledge he did possess provided a sufficiently detailed and consistent picture of the pertinent circumstances to permit his expression of an opinion as to the cause of the damages allegedly incurred by plaintiffs' three dairy operations. *See, e.g., Circle J. Dairy, Inc. v. A.O. Smith Harvestore Prods., Inc.,* 790 F.2d 694, 700–01 (8th Cir. 1986). *See generally Ramsey,* 738 F.2d at 1101 (defendants' complaints regarding expert's personal unfamiliarity with underlying facts and unreliability of third-party information relied upon went to weight of expert's testimony, not its admissibility).

■ In light of our holding sustaining the admission of Dr. Mayes's testimony, in which he opined that the unreasonably dangerous cocklebur-infested feed purchased from Farmland caused the problems noted in all three of the herds in question, Farmland's challenge to the sufficiency of the evidence must also fail, as Farmland itself evidently acknowledges. *See* Appellant's Brief at 16 ("The Hayes & Chaffin case is suspended *from failure of proof* by Dr. Mayes' opinion testimony."), 17 ("As in Hayes & Chaffin's case, Dr. Mayes gives the only testimony that causally connects the cockleburs in the feed to any problem in the Loftin herd"), and 19 ("The jury had no testimony upon which to support a finding of liability except that of Mayes, as to the medical effect of the cocklebur on Quinton's herd"). It is a truism that "an ex-

pert's opinion or interpretation of evidence is itself evidence." *Rodriguez v. Olin Corp.,* 780 F.2d 491, 496 (5th Cir.1986) (citing Fed.R.Evid. 703). Indeed, this court has held that expert testimony, if completely unopposed, may compel the entry of summary judgment in accordance with the opinions expressed. *See, e.g., Hurd v. American Hoist & Derrick Co.,* 734 F.2d 495, 500 (10th Cir.1984). Dr. Mayes's opinions were not similarly dispositive here, but viewed in the light most favorable to plaintiffs, they did provide the substantial evidence necessary to put the case in the jury's hands, and we must accordingly abide by its verdict.[2] *See generally Kitchens v. Bryan County Nat'l Bank,* 825 F.2d 248, 251 (10th Cir.1987) (review of jury verdict challenged on sufficiency grounds limited to question whether substantial evidence supported its determination).

■ The final issue raised by Farmland challenges the directed verdict granted Guthrie and WestArk on Farmland's third-party claim. We review this ruling de novo, applying the same standard as the district court: whether, viewing the record most favorably to Farmland, the evidence and permissible inferences therefrom so clearly support the third-party defendants that reasonable minds could not differ with the district court's conclusion. *See Guilfoyle ex rel. Wild v. Missouri, Kan. & Tex. R.R. Co.,* 812 F.2d 1290, 1292 (10th Cir. 1987).

The expressed basis for the directed verdict was the district court's conclusion that "there's no evidence that the product [as received by plaintiffs] was in the same condition and that the defect existed [in the corn] at the time it left the hands of WestArk and Guthrie." Trial tr. May 5, 11, and 12, 1989, at 319. *See generally Kirkland v. General Motors Corp.,* 521

---

**2.** We do not mean to imply that plaintiffs' case rested entirely on Dr. Mayes. While perhaps not quite as definitive or broad in all of his conclusions, plaintiffs' toxicologist, Carl McCoy, corroborated Dr. Mayes's opinions regarding the unreasonably dangerous nature of the feed sold by Farmland and its relationship to the subsequent sickness and death of the animals. *See, e.g.,* Trial tr. May 5, 11, and 12, 1989, at 189–91. Moreover, the highly suggestive chronology of the events underlying this suit also

supports plaintiffs' case. *See, e.g., Oklahoma Natural Gas Co. v. Pickett,* 258 P.2d 186, 187–88 (Okla.1953) (circumstantial evidence regarding presence of substances, left in plaintiff's pasture by defendant, capable of producing mechanical internal injury to cattle, coupled with subsequent consistent illness and death of some of plaintiff's animals, sufficient to take case to jury despite lack of direct physical evidence that substances had caused the harm).

P.2d 1353, 1363 (Okla.1974) (adopting theory of strict products liability and noting in course of discussion thereof that liability may be imposed on manufacturer only if operative defect "existed in the product … at the time the product left the manufacturer's possession and control"). While, as Farmland points out, initially all, and subsequently the majority, of the corn it used for feed during the pertinent time period came from WestArk and Guthrie, that fact alone cannot provide the basis for liability. On the record before us, in particular the testimony of Arnold Bogner, the general manager of Farmland's feed mill, Farmland failed to establish that any cockleburs were actually detected in the corn as shipped by WestArk and Guthrie. Mr. Bogner's opinion that the cockleburs came from the WestArk and Guthrie shipments was not based on either personal observation or information obtained at any of the quality control inspection points he discussed. Rather, he arrived at this opinion "[b]ecause [he] saw the feed after [Farmland obtained] the sample from the Danny Quinton farm" and it had an unusual amount of cockleburs in it. Trial tr. of May 5, 11, and 12, 1989, at 227. In other words, his opinion simply assumed the very fact to be established, i.e., that the cockleburs present in plaintiffs' feed were already in the corn shipped by WestArk and Guthrie. If Farmland had adduced evidence to demonstrate affirmatively that there existed no other external or internal source for the cockleburs and that the corn product had undergone no alteration or contamination in this respect after its shipment from WestArk and Guthrie, then the shipments could have constituted, in themselves, circumstantial evidence that the cockleburs must have been present, though undetected, in the corn sent by WestArk and Guthrie to Farmland. The failure of proof on this point justifies the directed verdict entered for WestArk and Guthrie.

Accordingly, the judgment of the United States District Court for the Eastern District of Oklahoma is AFFIRMED.