**David BURTON, Plaintiff,**

v.

**R.J. REYNOLDS TOBACCO COMPANY, and Brown & Willamson Tobacco Corporation, Defendants.**

**No. 94–2202–JWL.**

United States District Court, D. Kansas.

Jan. 11, 2002.

**1310**

Kenneth B. McClain, Nicholas E. Mebruer, Nimrod T. Chapel, Jr., Donald H. Loudon, Jr., Scott B. Hall, Humphrey, Farrington, McClain & Edgar, Independence, MO, Gregory Leyh, Kansas City, MO, for Plaintiff.

M. Warren McCamish, Williamson & Cubbison, Kansas City, KS, Junis C. McElveen, Jr., Jones, Day, Reavis & Pogue, Washington, DC, Sydney Bosworth McDole, William E. Marple, Thomas C. Pavlik, Clay Alfred Hartmann, Stephen B. Yeager, Jones, Day, Reavis & Pogue, Dallas, TX, Stephen J. Kaczynski, Michael A. Nims, Paul G. Crist, Randal S. Baringer, Jones, Day, Reavis & Pogue, Cleveland, OH, Catherine L. Bjorck, Jones, Day, Reavis & Pogue, Dallas, TX, James D. Griffin, Blackwell Sanders Peper Martin LLP, Kansas City, MO, James M. Warden, Blackwell Sanders Peper Martin LLP, Overland Park, KS, Frank C. Woodside, III, Mary–Jo Middelhoff, Dinsmore & Shohl LLP, Cincinnati, OH, Bruce G. Sheffler, James Mirro, Peter K. Eck, Nicholas Booke, Chadbourne & Parke LLP, New York City, for Defendants.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Defendants filed a motion to exclude the testimony of four of the plaintiff's experts: Dr. David Burns, Dr. Pamela Harris, Dr. Neil Grunberg and Dr. David Cossman (Doc. 465). The court denies the motion in its entirety.

● Standards

■ Federal Rule of Evidence 702 provides that an expert qualified "by knowledge, skill, experience, training, or education" may testify about "scientific, technical, or other specialized knowledge" if it "will assist the trier of fact to understand the evidence or to determine a fact in issue" and if "(1) the testimony is based upon sufficient facts or data, (2)

the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts." Fed. R. Ev. 702. In order to determine that an expert's opinion is admissible, a district court should, first, determine that the witness is qualified by "knowledge, skill, experience, training, or education" to render an opinion and, second, the court should determine "whether the witness' opinions are 'reliable' under the principles set forth under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)." *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965 (10th Cir.2001). The rejection of expert testimony is the exception rather than the rule. Fed.R.Evid. 702 advisory committee notes.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), the Supreme Court explained that Rule 702 assigns to the district judge a gatekeeping role to ensure that scientific testimony is both reliable and relevant. *Daubert*, 509 U.S. at 597, 113 S.Ct. 2786; *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 780 (10th Cir.1999). The district judge must, first, determine whether the proffered testimony is reliable, requiring an assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and, second, determine whether that reasoning or methodology can be properly applied to the facts in issue. *Daubert*, 509 U.S. at 592–93, 113 S.Ct. 2786. The *Daubert* Court listed four factors relevant to assessing reliability: (1) whether the theory has been tested; (2) whether the theory has been subject to peer review and publication; (3) the known or potential rate of

error associated with the theory; and (4) whether the theory has attained widespread or general acceptance. *Id.* at 592–94, 113 S.Ct. 2786. In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999), the Court emphasized that these four factors are not a "definitive checklist or test" and a court's inquiry into reliability must be "tied to the facts of a particular case." *Id.* at 150, 119 S.Ct. 1167. According to the Court, "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Id.* at 152, 119 S.Ct. 1167.

● Dr. Burns

Defendants ask the court to exclude the testimony of Dr. Burns regarding: (1) alternative designs of cigarettes, (2) his opinion that smoking causes PVD and caused Mr. Burton's case of PVD, (3) public awareness of the risks of smoking and, (4) the meaning and significance of documents produced by the defendants. The court will consider each in turn.

● Alternative designs of cigarettes

Defendants argue that Dr. Burns is not qualified as an expert to testify about the design of cigarettes and that, therefore, he should be precluded from offering his opinion that a cigarette without nicotine would be a safer design. The plaintiff responds by pointing out that Dr. Burns does not intend to testify about the feasibility of making a cigarette without nicotine but to offer his opinion that nicotine is an addictive and harmful substance and that, therefore, a cigarette without nicotine would be safer.

The record indicates that Dr. Burns is well qualified to testify about the harmful effects of smoking. Dr. Burns graduated from Harvard Medical School in 1972, is board certified in internal medicine

and pulmonary medicine, is a professor of medicine at the University of California at San Diego, authored or edited multiple Surgeon General Reports on the health consequences of smoking, and has written numerous articles concerning the health consequences of smoking. The court is persuaded that Dr. Burns is qualified by his knowledge, experience and education to testify about the health consequences of smoking, including the harmful and addictive effects of nicotine. Testimony that a cigarette not containing nicotine, if one were designed and manufactured, would be healthier than a cigarette containing nicotine goes to the subject on which Dr. Burns is qualified to testify, the harmful effects of nicotine.

● Cause of PVD and Mr. Burton's case of PVD

■ Defendants challenge the first prong of a Rule 702 analysis, arguing that Dr. Burns is not qualified to testify about the causes of PVD. Their argument is based on the fact that Dr. Burns is not an epidemiologist, is not specially trained or board certified in cardiology or vascular diseases, and has never conducted a study concerning PVD. As the court has already held, Dr. Burns is qualified as an expert to testify about the health consequences of smoking. Dr. Burns does not need to be an epidemiologist or board certified in the field of vascular disease to testify that smoking causes PVD. The Tenth Circuit has rejected the argument that a physician must be a specialist in a field to testify about subjects related to that field. *Quinton v. Farmland Industries, Inc.*, 928 F.2d 335, 336 (10th Cir.1991) ("This assumption about the insufficiency of general medical study, which reflects the implausible view that such training qualifies a doctor to diagnose and treat a wide range of physical disorders in the real world but not to render expert opinions about particular ex-

amples in the courtroom, has been expressly rejected in the case of physicians."). On the other hand, Tenth Circuit precedent establishes that "merely possessing a medical degree is not sufficient to permit a physician to testify concerning any medical-related issue." *Ralston*, 275 F.3d 965, 970. The dispositive issue, according to the Tenth Circuit, is whether the physician testifies within the reasonable confines of his or her subject area. *Compton v. Subaru of America, Inc.*, 82 F.3d 1513, 1520 (10th Cir.1996) (quoting *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1100 (10th Cir.1991)). Dr. Burns' education and experience in internal medicine and pulmonary medicine, combined with his extensive list of publications on the subject of the harmful effects of smoking, qualifies Dr. Burns to testify about the harmful effects of smoking, including PVD. The fact that Dr. Burns has not conducted a study concerning PVD does not preclude him from testifying about the causes of PVD. Any alleged gap in Dr. Burns' qualifications goes to the weight of his expert opinion and can be adequately addressed by cross-examination. *Compton*, 82 F.3d at 1520; Wright & Gold, *supra*, at § 6265 ("Gaps in an expert witness's qualifications or knowledge generally go to the weight of the witness's testimony, not its admissibility.").

The defendants argue that Dr. Burns' testimony should be excluded because it is allegedly based on various Surgeon General's Reports, characterized by the defendants as a "compendia of conclusions contained in articles about various health risks of smoking." The court's conclusion that Dr. Burns is qualified as an expert is not based solely on the fact that Dr. Burns has written and edited multiple Surgeon General's Reports on the health consequences of smoking, although the court finds this to be a significant qualification. His edu-

cation and experience related to the harmful effects of smoking, set out above, qualify Dr. Burns as an expert.

■ The defendants also argue that Dr. Burns' opinion should be excluded because, in his deposition, Dr. Burns could not identify any specific studies upon which he relied. The court does not believe that this failure indicates that Dr. Burns' testimony about the causes of PVD is unreliable. Other circuits agree that a medical expert need not cite published studies for his or her opinion about causation to be reliable. *See, e.g., Turner v. Iowa Fire Equipment Co.,* 229 F.3d 1202, 1208 (8th Cir.2000); *Heller v. Shaw Indus., Inc.,* 167 F.3d 146, 154–55 (3d Cir.1999) (Becker, C.J.) ("We do not believe that the [district] court's reading of Rule 702—as requiring research studies supporting a finding of general causation-is correct."). Dr. Burns' extensive knowledge, education and experience, set out above, qualify him as an expert to testify about the causes of PVD and indicate that his testimony will be sufficiently reliable. *See In re Paoli Railroad Yard PCB Litigation,* 35 F.3d 717, 742 (3d Cir.1994) (C.J., Becker) (offering factors in addition to those listed in *Daubert* to evaluate reliability, including "the degree to which the expert testifying is qualified"). While he was not able to cite to specific studies in his deposition, Dr. Burns indicated that he is aware of multiple studies showing the link between smoking and PVD.[1] His inability to name the studies or discuss their methodology are appropriate subjects for cross-examination and go to the weight of his opinion, not its admissibility.

Defendants argue that Dr. Burns should not be able to testify that Mr. Burton's case of PVD was caused by smoking, asserting that Dr. Burns never talked to, examined or tested Mr. Burton. The plaintiff responds by pointing out that Dr. Burns reviewed Mr. Burton's medical records. *See* Plaintiff's exhibit H, at 23. The fact that Dr. Burns did not spend any time examining Mr. Burton in person does not suggest that he is not qualified to testify that cigarette smoking caused Mr. Burton's case of PVD, but goes to the issue of the reliability of Dr. Burns' testimony, specifically whether it is "based upon sufficient facts or data".[2] Fed. R. Ev. 702. The defendants do not present any evidence indicating that an examination or testing of the patient is necessary or even helpful in diagnosing a case of PVD and its cause. The court believes that, under the circumstances presented here, an examination of the patient's medical records is sufficient data on which to base a reliable diagnosis. To the extent that Dr. Burns' testimony can be called into question by the lack of his examining Mr. Burton, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" are appropriate means of attacking his opinion. *Daubert,* 509 U.S. at 596, 113 S.Ct. 2786; *Heller,* 167 F.3d at 152 ("Clearly, the Court envisioned cases in which expert testimony meets the *Daubert* standard yet is 'shaky,' and cases in which admissible expert testimony provides only a 'scintilla' of support for a claim or defense."). Again, cross-examination should adequately address the defendant's concern as the doctor's failure to examine Mr. Burton in

---

1. Dr. Burns also purports to rely on medical literature, including Surgeon General's Reports, setting out the risk factors for PVD.

2. The court does not believe that the defendants are challenging Dr. Burns' qualifica-

tions to diagnose PVD. To the extent that their brief could be read as such, the court holds that Dr. Burns' education and experience as a physician qualify him as an expert to diagnose PVD.

person goes to the weight of his testimony. *See* Wright & Gold, *supra*, at § 6265.

• Public knowledge of smoking harms

Defendants argue that Dr. Burns should be precluded from testifying about consumer awareness of the harms of smoking because he is not qualified as an expert to give such an opinion. The plaintiff responds by pointing out that Dr. Burns has authored several Surgeon General's Reports, served as a board member for institutions related to the study of smoking and public education, and written extensively on the subject of smoking. The plaintiff also points out that part of treating a patient is educating patients about the harms of smoking and allows a physician to learn about the patient's awareness of the health consequences of smoking.

The court denies the defendants' request to exclude Dr. Burns testimony on this subject without prejudice. The defendants frame the question too narrowly. This is the type of testimony that may or may not "assist the trier of fact" and that Dr. Burns may or may not be qualified to give depending on the specific context of his actual proposed testimony at trial. The court, therefore, does not believe that it would be appropriate to rule on the matter in advance of trial. The defendants may raise the objection at trial.

• Opinion about defendants' documents

Defendants argue that Dr. Burns should be precluded from offering his opinion about documents produced by the defendants during discovery. Specifically, the defendants want to preclude Dr. Burns from testifying that, based upon a review of these documents, he believes that the defendants were aware of the relationship between smoking and PVD but did not share the information with the public. The defendants argue that the documents speak for themselves, that Dr. Burns is not needed to interpret the documents, and

that interpretation of documents is not an area of expertise for which a witness may qualify as an expert. The plaintiffs argue that Dr. Burns, as a doctor, is qualified to "offer opinions about the accuracy of health information provided by and known to the tobacco industry and whether the tobacco industry's public statements and conduct were consistent with their internal understanding."

Like testimony about public awareness of the harms of smoking, the court can envision testimony about the documents that would be helpful to the jury and that Dr. Burns would be qualified to give and also testimony that would be inappropriate, all depending on the actual circumstances. The court, therefore, declines to rule prior to trial and without the benefit of knowing the context of the actual proffered testimony. The defendant's request, therefore, is denied without prejudice.

• Dr. Harris

■ The defendants argue that because Dr. Harris specializes in rehabilitation therapy that she should be precluded from offering opinions beyond her speciality. As the court explained with respect to Dr. Burns, a physician is not limited to testifying about his or her speciality. *Quinton,* 928 F.2d at 336. Instead, Dr. Harris may testify about matters within the reasonable confines of her subject area. *Compton,* 82 F.3d at 1520. The court believes that the diagnosis of PVD and its causes are within the confines of Dr. Harris' subject area. Dr. Harris was Mr. Burton's treating physician and, thus, was involved in the diagnosis and treatment of Mr. Burton's case of PVD. As the Tenth Circuit recognized in *Quinton,* it would be unreasonable to exclude the testimony of a physician about a physical condition when that physician is expected to diagnose and treat the physical condition in her practice.

The defendants also argue that Dr. Harris is not qualified to testify about the cause of PVD because she has not published any articles on the subject and has formed her opinion on the cause of PVD by reading textbooks and reviewing literature and studies generated through a search of the Medline database. The fact that Dr. Harris has not published articles on the subject of PVD does not disqualify her from testifying about PVD but goes to the weight of her testimony and can be addressed by cross-examination. The defendants also allege that Dr. Harris formed her opinion about the causes of PVD by spending "a few hours looking at textbooks and reviewing literature. . . ." The deposition testimony cited by the defendants indicates that Dr. Harris spent nine hours reviewing textbooks and other medical literature in preparation of her expert report. Dr. Harris did not testify that this research was the exclusive basis for her knowledge about PVD and its causes. Even if it were, cross-examination would be the appropriate means to raise this challenge to her qualifications and would go to the weight of her opinion. As the court has already explained, Dr. Harris is qualified to testify about the causes of PVD.

- Dr. Grunberg

Defendants ask the court to exclude the testimony of Dr. Grunberg regarding: (1) his opinion that Mr. Burton was addicted to nicotine, (2) his opinion that smoking causes PVD and caused Mr. Burton's case of PVD, and (3) the meaning and significance of documents produced by the defendants.

- Opinion that Mr. Burton was addicted

The defendants argue that Dr. Grunberg acknowledged in his deposition that a number of steps are required to diagnose nicotine dependence and allege that Dr. Grunberg did not follow these steps in evaluating whether Mr. Burton was addicted to nicotine. Because Dr. Grunberg did not follow all of these steps, the defendants argue, "he lacks the scientific basis necessary" to opine that Mr. Burton was addicted to nicotine.

The defendants' argument that Dr. Grunberg needed more information to reliably evaluate Mr. Burton's nicotine addiction is based on Dr. Grunberg's deposition. The defendants take excerpts from Dr. Grunberg's deposition where Dr. Grunberg testifies that certain information would be helpful in evaluating nicotine dependence and argue that, if Dr. Grunberg did not obtain this information from Mr. Burton, that his evaluation of Mr. Burton's nicotine dependence was unreliable. The court is not persuaded. After reviewing Dr. Grunberg's deposition, the court concludes that the testimony does not support the argument that Dr. Grunberg obtained insufficient information to reliably evaluate Mr. Burton's nicotine dependence. Dr. Grunberg testified at his deposition that evaluating nicotine dependence is a complex process and that what information is needed to properly evaluate a patient depends on the patient. Dr. Grunberg testified that after speaking with Mr. Burton on the phone, his nicotine dependence was "so clear" that an in-person interview to obtain additional information was not necessary. The court is persuaded, based on the deposition testimony of Dr. Grunberg, that the information obtained by Dr. Grunberg was sufficient to satisfy the requirement of reliability for expert testimony. Any of the alleged deficiencies in Dr. Grunberg's evaluation can be adequately addressed by cross-examination and would go to the weight of Dr. Grunberg's expert opinion.

- Causes of PVD and Mr. Burton's case of PVD

The defendants also argue that Dr. Grunberg should not be allowed to testify

about the causes of PVD or that Mr. Burton's case of PVD was caused by smoking cigarettes. The defendants point out that Dr. Grunberg has not published any articles on PVD and has not done animal testing to study the effect of smoking on blood vessels. Dr. Grunberg is not a medical doctor, but has doctorate degrees in psychology and in pharmacology. The plaintiff points to Dr. Grunberg's deposition testimony indicating that he instructs "medical students and physicians on cigarette smoking as it relates to cardiovascular disease and its subsets" and points out that Dr. Grunberg has published numerous articles about the effects of nicotine and was awarded a grant to study the "biobehavioral effects of nicotine in young rats." The plaintiff argues that Dr. Grunberg need not be a medical doctor to be qualified to testify and that he is qualified by his "specialized knowledge of the effects of nicotine on humans."

▪ The court agrees that Dr. Grunberg does not need a medical degree to testify about the effects of nicotine if he is otherwise qualified to testify on the subject. Dr. Grunberg is qualified to testify about the effects of nicotine on the human body based on his education in pharmacology, the science of the chemistry and actions of drugs, as well as his numerous articles about the biological effects of smoking on humans and his experience teaching medical students and physicians about the same. The failure of Dr. Grunberg to study the effects of smoking on blood vessels and his lack of publications concerning PVD goes to the weight of his expert opinion and can be addressed by cross-examination about his qualifications.

▪ The defendants also argue that Dr. Grunberg should not be allowed to testify that smoking caused Mr. Burton's case of PVD. They allege that Dr. Grunberg has not reviewed Mr. Burton's medical records, has not examined Mr. Burton and has not taken Mr. Burton's medical history. The plaintiff responds by pointing out that Dr. Grunberg has interviewed the plaintiff on at least three occasions, by telephone and in person. Again, the defendant's argument goes to the reliability of Dr. Grunberg's expert opinion that smoking caused his case of PVD. The defendants have not presented the court with any evidence indicating that anything more than three interviews is necessary to reliably opine that smoking caused Mr. Burton's case of PVD.[3] The lack of information that Dr. Grunberg had about Mr. Burton can be addressed in cross-examination and goes to the weight of his opinion.

● Opinion about defendants' documents

The defendants seeks to exclude Dr. Grunberg's testimony that the tobacco industry knew of the harmful effects of nicotine. The defendants argue that his opinion should be excluded because, like Dr. Burns, he is not qualified as an expert in this respect, the information would not be helpful to a jury, and because Dr. Grunberg did not disclose or identify the data or information relied upon in forming his opinion. As with Dr. Burns, the court denies the defendants' request to exclude this testimony without prejudice. The defendants may raise the objection at trial and the court will evaluate it in the context of the actual testimony that plaintiff seeks to elicit from the witness.

● Dr. Cossman

Defendants seek to exclude Dr. Cossman's testimony that smoking causes PVD

---

**3.** The defendants do not challenge Dr. Grunberg's qualifications to diagnose the cause of Mr. Burton's case of PVD; they only challenge the reliability of the diagnosis based on the limited information reviewed by Dr. Grunberg.

and that smoking caused Mr. Burton's case of PVD. Dr. Cossman is a vascular surgeon. The defendants argue that because of his speciality, Dr. Cossman should be limited to testifying about "the various surgeries and amputations performed on Mr. Burton and whether these procedures were in keeping with the applicable standard of care." As the court has already explained, Dr. Cossman's testimony is not limited by his speciality and he may testify about any matter within the reasonable confines of his or her subject area. *Compton*, 82 F.3d at 1520.

 Defendants next argue that Dr. Cossman "lacks reliable scientific information to render an opinion to a reasonable degree of medical certainty." The basis of the defendants' argument is that medical literature, including one article cited in Dr. Cossman's expert report, indicates that the relationship between smoking and PVD "is complex and not simply cause and effect" and that there are multiple risk factors for developing PVD. The fact that the defendants can point to one or more pieces of medical literature that they contend may disagree, in part, with the proposed testimony of the expert does not show that the expert's testimony is not reliable. The defendants' challenge is one that is appropriate for cross-examination and would go to the weight to be given to Dr. Cossman's opinion. Moreover, as noted in the court's recent ruling on the defendants' summary judgment motions (Doc. 531), the fact that there may be more than one cause of plaintiff's PVD would not preclude him from adducing evidence which he believes will persuade the trier of fact that smoking contributed to his condition. *See* January 8, 2002 order at 18–19.

 The defendants also challenge Dr. Cossman's opinion that Mr. Burton's case of PVD was caused by smoking. The defendants allege that Dr. Cossman has never examined Mr. Burton or consulted with any of Mr. Burton's treating physicians. Additionally, the defendants argue that because "no one ever measured the amounts of any particular constituents of cigarette smoke that actually got into Mr. Burton's system," no doctor can opine that nicotine or any other chemical in cigarettes caused Mr. Burton's case of PVD. Dr. Cossman testified at his deposition that he reviewed Mr. Burton's medical file, a fact made evident by Dr. Cossman's expert report. As with Dr. Burns, the defendants have not presented evidence indicating that a doctor must conduct a physical examination of a patient or consult with treating physicians in order to reliably diagnose the cause of the patient's case of PVD. The court believes that, under the circumstances presented here, an examination of this patient's medical records is sufficient data on which to base a reliable diagnosis. The failure of Dr. Cossman to examine Mr. Burton is a subject appropriate for cross-examination.

IT IS THEREFORE ORDERED that defendants' motion to exclude the expert testimony of Dr. Burns, Dr. Harris, Dr. Grunberg and Dr. Cossman (Doc. 465) is denied in its entirety. Where specifically noted in this order, defendants may renew their objections at trial. Otherwise, to the extent that the plaintiff's experts offer testimony consistent with and based upon the information disclosed in the affidavits and deposition experts on which the court relied in making these rulings, this constitutes a definitive ruling on these questions.