492 P.2d 140

Raymond L. ROMERO and Lucy S. Romero,
his wife, Plaintiffs-Appellants,

v.

Camilo E. SANCHEZ and Eila R. Sanchez,
his wife, Defendants-Appellees.

No. 9237.

Supreme Court of New Mexico.

Dec. 30, 1971.

Ahern, Montgomery & Albert, Malcolm L. Shannon, Jr., Albuquerque, for plaintiffs-appellants.

Avelino V. Gutierrez, Raymond G. Sanchez, Albuquerque, for defendants-appellees.

## OPINION

STEPHENSON, Justice.

Appellants ("plaintiffs") brought this action to set aside a deed executed by them to appellees ("defendants") on the grounds of fraud, and for damages. Defendants successfully moved for summary judgment and plaintiffs appealed. We reverse.

The complaint alleged that plaintiffs were the owners of certain land in Valencia County which defendants, on March 2, 1953, agreed to purchase for $10,000.00, payable $200.00 per month; that defendants went into possession and have paid a total of $400.00.

The first question presented is whether the allegations of fraud are legally sufficient. In that behalf, the complaint alleges that:

1. The parties are related.

2. Plaintiffs have relied on the advice and judgment of defendants as to business and legal matters.

3. At the outset, defendants falsely and fraudulently represented to plaintiffs that in order to have the property assessed for tax purposes, it would be necessary for plaintiffs to execute a deed.

4. Defendants further falsely and fraudulently represented that the deed would not and could not be used unless it was reexecuted before a notary.

5. Defendants further represented that the deed would not and could not be recorded until they had paid the agreed purchase price.

6. Defendants caused a notary to affix an acknowledgment in ordinary form to the deed, although plaintiffs never appeared before any notary to acknowledge their signatures.

7. Defendants, after about seven years and on November 24, 1961, falsely and fraudulently caused said deed to be recorded in the records of Valencia County.

8. Plaintiffs did not learn of the deed having been recorded until February, 1968.

Additional allegations, about which no question has been raised as to their sufficiency, cover other elements of actionable fraud.

Circumstances constituting fraud must be alleged with particularity. Rule 9(b), Rules of Civil Procedure [§ 21–1–1(9) (b), N.M. S.A., 1953]. Defendants, taking the allegations one by one, argue in a plausible and forceful way that each allegation is deficient. Nevertheless, accepting the allegations as true, as we must at this juncture, we feel that in the aggregate they allege with sufficient particularity a fraudulent plan, scheme or design.

In re Trigg, 46 N.M. 96, 121 P.2d 152 (1942), although decided prior to Rule 9(b), contains more discussion on pleading fraud than any case decided during existence of the rule. It held that it was unnecessary to even use words such as "fraud" or "fraudulent," provided:

"* * * the facts alleged are such as constitute fraud in themselves, or are facts from which fraud will be necessarily implied." (Quoting 24 Am.Jur., Fraud and Deceit, § 244.)

That standard is met here. See also 2A Moore's Federal Practice, Par. 9.03.

Defendants also claim that plaintiffs' cause of action was, as a matter of law, barred by limitations, based upon the deed having been recorded on November 24, 1961 and suit not having been filed until October 28, 1968, notwithstanding an allegation in the complaint that plaintiffs did not learn that the deed had been recorded until February, 1968. Plaintiffs equate the date of actual discovery of fraud with

their discovery of the fact of recording and defendants do not controvert this assertion.

Resolution of the limitations issue requires consideration of several New Mexico statutes. Section 23–1–7, N.M.S.A., 1953, relied upon by plaintiffs, provides:

"23–1–7. Accrual of actions for fraud or mistake, injuries or conversion of property.—In actions for relief, on the ground of fraud or mistake, and in actions for injuries to, or conversion of property, the cause of action shall not be deemed to have accrued until the fraud, mistake, injury or conversion complained of, shall have been discovered by the party aggrieved." . .

Plaintiffs assert the period of limitations does not commence to run until actual discovery of the fraud.

Defendants assert constructive knowledge of any fraud was imputed to plaintiffs by virtue of § 71–2–2, N.M.S.A., 1953, which caused the limitation period to commence running. That statute provides:

"71–2–2. Constructive notice of contents.—Such records shall be notice to all the world of the existence and contents of the instruments so recorded from the time of recording."

Construction of § 71–2–2 requires consideration of its companion, § 71–2–3, which provides:

"71–2–3. Unrecorded instruments—Effect.—No deed, mortgage or other instrument in writing, not recorded in accordance with section 4786 [71–2–1], shall affect the title or rights to, in any real estate, of any purchaser, mortgagee in good faith, or judgment lien creditor, without knowledge of the existence of such unrecorded instruments."

Before dealing with questions which are before us, we will briefly mention some which are not. Section 71–1–3, N.M.S.A., 1953 provides in part that instruments not "duly acknowledged" may not be recorded "nor considered of record, though so entered." Was this deed "duly acknowledged"? This question is not raised.

Similarly, § 71–2–2 provides that recording shall be notice of "the existence and contents" of the recorded instrument. Does this carry with it notice of the fact of recording? This question is not raised either.

The position of the parties is predicated upon the literal interpretation of a word or words contained in the statute upon which they rely. Plaintiffs rely upon "discovered" in § 23–1–7 as meaning actual discovery and defendants rely upon "notice to all the world" in § 71–2–2.

We do not agree that the solution is so simple, although each position finds support in adjudicated cases. For support of defendants' theory, see Pinkerton v. Pinkerton, 122 Kan. 131, 251 P. 416 (1926). Plaintiff principally relies on Alexander v. Cleland, 13 N.M. 524, 86 P. 425 (1906). There the court interpreted an ·earlier— but practically identical statute—and said:

"The words used in these sections seem to us to be as plain as any in the English language. There can be no doubt as to their meaning. The statute of limitations in cases of fraud is four years and the four years begin to run from the time the fraud is discovered by the party aggrieved."

Although this would apparently be the meaning of the case, it appears that it has never been cited for that proposition. There are, however, cases in other states which require actual discovery of fraud, and which refuse to recognize constructive notice of fraud. E. g., Schoedel v. State Bank of Newburg, 245 Wis. 74, 13 N.W. 2d 534, 152 A.L.R. 459 (1944).

It suffices to say there is a split of authority on the issue with which we are confronted. 37 Am.Jur.2d, Fraud and Deceit, § 411, says:

"Many decisions either distinctly reject the rule of record notice in limitation cases, or refuse to apply it to particular circumstances in question, or take the view that the public records are notice only when the transaction is of a character requiring the defrauded party to

examine the records, or when the facts put him on inquiry in reference to matters of record."

See also Annot., 137 A.L.R. 268 and Annot., 152 A.L.R. 461.

"Discover" as it relates to fraud is generally defined as discovery of such facts as would, on reasonable diligent investigation, lead to knowledge of fraud. 12A Words and Phrases, "Discovery of Fraud."

A good analysis of the conflicting rules in this area is contained in a passage from 37 Am.Jur.2d, Fraud and Deceit, § 411, at 558–59, where it is observed that there is difficulty in determining the true meaning of those cases which hold that recording by itself will cause the statute of limitations to commence running. For if the general rule is that the statute runs from the time that reasonable diligence would have discovered the fraud, reference to matters of public record adds little if such diligence would naturally have included a search of such records. However, if the party is to be bound by the record even if reasonable diligence would not have led to its examination, he will likely be the victim of "a rule of thumb rather than a live principle of law, [which] takes no account of the numerous forms in which fraud may appear and its varied devices and circumstances of concealment. * * *"

This rationale can be seen in the following decisions: Elliott v. Goss, 250 N.C. 185, 108 S.E.2d 475 (1959); Abels v. Bennett, 158 Neb. 699, 64 N.W.2d 481 (1954); and Vail v. Vail, 233 N.C. 109, 63 S.E.2d 202 (1951), all of which hold that the recording of a deed must be accompanied by other circumstances sufficient to put a reasonable person upon inquiry in order for the recording to act as constructive notice of the fraud.

We are led to the same conclusion by construction of our recording statutes. Section 71–2–2 is rather unique in its sweep in imputing notice to "all the world," although various courts, apparently in the throes of impulses to generalize, have made similar statements. Courts and writers have then been required to consider whether "all of the world" or "the whole world" really means what it says. An examination of this material fairly well destroys the idea that it does. For example:

"Recording acts were passed for the purpose of providing a place and a method by which an intending purchaser or encumbrancer can safely determine just what kind of title he is in fact obtaining." 45 Am.Jur., Records and Recording Laws, § 29.

"The general policy of the law relating to titles to land is to protect bona fide purchasers against loss from secret liens not disclosed by any public record not ascertainable by due diligence." 8 Thompson, On Real Property, § 4291 at 227 (1963 repl.).

"* * * [T]he universal rule is that the record of an instrument is constructive notice to subsequent purchasers and encumbrancers only, and does not affect prior parties * * *." 45 Am.Jur., supra, § 89, citing Armstrong v. Ashley, 204 U.S. 272, 27 S.Ct. 270, 51 L.Ed. 482.

"The proposition is frequently announced that under the recording statutes, the proper record of an instrument authorized to be recorded is notice to all the world. But this means simply that the record is open to all, and is notice to interested parties. The record of an instrument is notice only to those who are bound to search for it. It is not a publication to the world at large. Those who, by the terms of the recording laws, are charged with constructive notice of the record of an instrument affecting land are, therefore, those who are bound to search the records for that particular instrument." Id., § 86.

■ Section 71–2–2 must be considered with § 71–2–3 with which it is in pari materia. Obviously constructive notice to all the world cannot mean precisely that; it must be interpreted, defined and limited by the courts. Having done this, we are convinced that our recording statutes ought to be held to have the same purpose and

**362**

meaning as those of most other jurisdictions, viz: that they are intended to protect those having subsequent dealings with the property, and that the record imputes notice only to those who are bound to search for it. Certainly the statutes were not intended as an automatic shelter for fraud.

What we have said does no violence to our precedents. New Mexico has long recognized the previously quoted general purpose of recording acts. See Arias v. Springer, 42 N.M. 350, 78 P.2d 153 (1938); Chetham-Strode v. Blake, 19 N.M. 335, 142 P. 1130 (1914); Ilfeld v. Baca, 13 N.M. 32, 79 P. 723 (1905), rev'd on other grounds, 14 N.M. 65, 89 P. 244 (1907). It has also recognized the concept of constructive notice. Taylor v. Hanchett Oil Co., 37 N.M. 606, 27 P.2d 59 (1933).

We hold, therefore, that the mere recording of the deed did not impute constructive notice thereof to the plaintiffs. However, if, considering all the surrounding facts and circumstances, a reasonably prudent person in the exercise of ordinary diligence would have made inquiry as to the state of the record, he is chargeable with knowledge that such inquiry would have revealed from the time that it ought to have been made. This raises a factual issue for resolution by the trier of the facts.

Finally, defendants assert that the action was barred by laches and adverse possession. The record as it stands does not contain a factual predicate for the granting of summary judgment to defendants on either of those grounds. Moreover, the latter was not pleaded, and cannot be raised here for the first time. Supreme Court Rule 20 [§ 21-2-1(20), N.M.S.A., 1953]; Western Farm Bureau Mutual Ins. Co. v. Barela, 79 N.M. 149, 441 P.2d 47 (1968).

The summary judgment is reversed, with instructions to reinstate the case on the trial docket and to proceed in a manner consistent herewith.

It is so ordered.

McMANUS and OMAN, JJ., concur.