628 P.2d 316

**K. Claudette WITHERS and Garner E. Withers, Plaintiffs-Appellants,**

v.

**The BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF SAN JUAN, and Harley Douglass and E. Revay Douglass, Defendants-Appellees.**

**No. 4740.**

Court of Appeals of New Mexico.

Feb. 26, 1981.

Leslie E. Nunn, Farmington, for plaintiffs-appellants.

Reed Frost, Palmer & Frost, Farmington, Paul L. Butt, Shaffer, Butt, Thornton & Baehr, Albuquerque, Ken McDaniel, Asst. Dist. Atty., Farmington, for defendants-appellees.

## OPINION

ANDREWS, Judge.

San Juan County (County) published an invitation for bids on a tract of land adjacent to property Harley and E. Revay Douglass (Douglasses) held under a real estate contract. Pursuant to the conditions of the invitation allowing adjoining landowners to meet successful bids on the property, the Douglasses were awarded the property when they met the bid submitted by Garner and Claudette Withers (Withers). The Withers filed suit seeking injunctive relief and damages for the County's refusal to award them the property. Summary judgment was entered in favor of the County and the Douglasses. The Withers appeal.

In 1968, the Douglasses entered into a real estate contract for the purchase of land adjoining that which is the subject of this appeal. Sometime later, the Douglasses conveyed title to the property by warranty deed pursuant to a revocable trust agreement entered into with the Seventh Day Adventist Association of Colorado (Trustee). The Trustee's powers over the property were not to commence until the death of the Settlors who had the right to withdraw the property from the trust estate at any time.

On May 6, 1979, the County published a bid invitation with a May 14, 1979, deadline, which provided that "[i]f the successful bid on any parcel to be sold is made by a bidder other than the owner or owners of land adjacent to and adjoining such parcel and such owner or owners have also submitted a bid on the parcel, the Board of County Commissioners reserve the rights to allow such adjacent and adjoining landowner or owners to meet the successful bid . . . ." On May 14, 1979, the Trustee executed a quitclaim deed reconveying the property to the Douglasses who then submitted the matching bid under which the County awarded the property. Thus, on May 14, the Douglasses were record owners of the property subject to the real estate contract.

Plaintiffs assert that the invitation to bid requires record ownership of the adjoining land, and that a purchaser under a real estate contract is not an "owner" of the property. Thus, the Douglasses were not "adjoining landowners" entitled to submit a matching bid pursuant to the bid invitation.

■ In this case, the records of the County Clerk reflect only the deed from the Douglasses to the Seventh Day Adventist Association of Colorado with no mention of the trust. According to the Withers, the Trust Agreement "affected title to real estate" and therefore § 14–9–1, N.M.S.A. 1978, requires that it be recorded. Relying on § 14–9–3, N.M.S.A. 1978, they argue that the failure to record renders the Trust Agreement ineffective as to "the title of the plaintiffs on or to the land in question."

In asserting that they are entitled to the protection of the recording statute, plaintiffs ignore the clear and consistent reasoning of New Mexico case law, which holds that the object of the recording statute is to protect those who invest money in property or mortgage loans and those who have acquired judgment liens without knowledge of infirmities in title. *Arias v. Springer*, 42 N.M. 350, 78 P.2d 153 (1938). *See Romero v. Sanchez*, 83 N.M. 358, 492 P.2d 140 (1971); *Grammer v. New Mexico Credit Corp.*, 62 N.M. 243, 308 P.2d 573 (1957); *Wells v. Dice, et al.*, 33 N.M. 647, 275 P. 90 (1929).

In order to avail themselves of the protection of § 14–9–3, plaintiffs would have to be purchasers, mortgagees in good faith, or judgment lien creditors of the land which is the subject of the trust agreement. Plaintiffs clearly do not qualify as a "purchaser" which under *Arias v. Springer, supra*, has

> . . . two well-defined meanings. The common and popular meaning is that he is one who obtains title to real estate in consideration of the payment of money or its equivalent; the other is a technical meaning and includes all persons who acquire real estate otherwise than by descent . . . .

42 N.M. at 359, 78 P.2d 153, nor are plaintiffs good faith mortgagees or judgment lien creditors.

■ As to a purchaser under a real estate contract, in New Mexico the rule "... is that the vendee, under an executory contract for the sale of realty, acquires an equitable interest in property. By application of the doctrine of equitable conversion, the vendee is treated as the owner of the land and holds an interest in real estate." *Marks v. City of Tucumcari*, 93 N.M. 4, 6, 595 P.2d 1199, 1200 (1979). This result is consistent with the definition of "owner" found in other decisions concerned with the ownership of land. *See Mesich v. Board of Commissioners of McKinley County*, 46 N.M. 412, 129 P.2d 974 (1942), an eminent domain proceeding where the term "owner ... includes all persons who have an interest or estate in the property taken or injured; and *Scudder v. Hart*, 45 N.M. 76, 110 P.2d 536 (1941), a tax title case where the word "owner" is held to refer to one who has a substantial interest in the premises, including mortgagees, judgment creditors and holders of contingent interests in the land.

■ In reviewing a summary judgment, we must determine that the movant had met his burden by demonstrating "an absence of a genuine issue of fact," as to any material issue. *Goodman v. Brock*, 83 N.M. 789, 498 P.2d 676 (1972). Thus, unless there is "evidence sufficient to create a reasonable doubt as to the existence of genuine issue," summary judgment is proper. *Pharmaseal Laboratories, Inc. v. Goffe*, 90 N.M. 753, 568 P.2d 589 (1977).

The protection afforded by the New Mexico recording acts is inapplicable to this case since the revocable trust does not affect the title to the original property held by the Douglasses and since the Withers were not good faith purchasers for value. Where the Douglasses were record owners of the property as of the deadline for submission of bids, all of the auction requirements imposed by the County were met and title was properly vested in the Douglasses. There being no genuine issue as to the facts which go to the dispositive issue—the issue of ownership—the decision of the trial court granting the summary judgment in favor of defendants, and dismissing plaintiffs' action is affirmed.

WALTERS, J., concurs.

SUTIN, J., concurring in result.

SUTIN, Judge (concurring in the result).

I concur in the result.

## INTRODUCTION

Plaintiffs, the Withers, did not set forth any "points relied upon in the argument," Rule 9(h), Rules of Civil Appellate Procedure, nor set forth any genuine issues of material fact in order to reverse the summary judgment. This case cannot be heard on the merits. Withers claim that defendants were not entitled to summary judgment but the Withers were entitled to summary judgment.

San Juan County claims it was immune to liability for damages under the New Mexico Tort Claims Act, § 41–4–1, et seq., N.M.S.A. 1978, and Withers did not reply. San Juan County would be entitled to summary judgment under this Act, but the County did not raise the issue in the trial court. The Douglass defendants stated one sentence in a Memorandum Brief:

> Further, the County has immunity under the provisions of § 42–11–1 NMSA, 1979 Supp.

This statute grants immunity to the State and its political subdivisions "from and may not be named a defendant in any suit, action, case or legal proceeding involving a claim of title to or interest in real property except as specifically authorized by law." Laws 1979, ch. 110, § 1. This issue was abandoned in the appeal.

These issues would be interesting to resolve but they shall have to await another lawsuit of this nature. The briefs filed in this Court are similar to those filed in the trial court. An independent view of this case is necessary.

## CHRONOLOGY OF EVENTS

The chronology of events were as follows:

1. On April 18, 1968, by Escrow Agreement, Douglass purchased from Wilkes, the real estate that adjoins the land owned by San Juan County.

2. On July 12, 1977, Douglass entered into a Revocable Trust Agreement with the Seventh Day Adventist Association of Colorado. During Douglass' lifetime, the Trust Agreement provided that the Trustee shall exercise no rights or duties with respect to the trust estate, and the Trustee shall hold title only to the real estate, but Douglass shall have all rights of possession. This Revocable Trust Agreement was not filed of record in San Juan County. *Neither do I find any conveyance from Douglass to the Trustee.* An endorsement to the trust agreement states:

> Trustee hereby acknowledges that on the 22nd day of May, 1977, it received the following assets which were made a part of the corpus of said Trust Agreement: Real estate property in the County of San Juan, New Mexico, described as to wit: [Description followed.]

Although the Douglass' affidavit states "that thereafter, the Affiant and her husband conveyed certain property in the attached Escrow Agreement and in the attached deed," the attached deed was one from the Trustee to Douglass dated May 14, 1979, but recorded October 18, 1979. As far as the record shows, Douglass' interest in the Escrow Agreement was never conveyed to the Trustee. It remained in Douglass.

3. Taxes for the year 1977 were assessed in names of Wilkes, Seventh Day Adventist, Attn. Douglass and paid November 29, 1978 and May 7, 1979.

4. On Sunday, May 6, 1979, San Juan County published a Notice in the Farmington Daily Times, Farmington, New Mexico, in which it asked for sealed bids for its property to be publicly opened on May 11, 1979. The Notice stated:

* * * * * *

6. The Board of County Commissioners of San Juan County reserves the right to reject any and/or all bids without incurring legal liability.

* * * * * *

8. If the successful bid on any parcel to be sold is made by a bidder other than *the owner or owners of land adjacent to such parcel and such owner or owners have also submitted a bid on the parcel, the Board of County Commissioners reserves the right to allow such adjacent and adjoining land owner or owners to meet the successful bid and to purchase the parcel if the successful bid is so met,* if said adjoining land owner meets said bid before noon May 14, 1979, subject to all the requirements of the original bid. It is the responsibility of the adjoining land owner to determine whether he was the prevailing bidder and, if not, to meet the high bid before noon May 14, 1979. [Emphasis added.]

5. At the bid opening held in the County Commissioners' room on Friday, May 11, 1979, the bids were opened and read aloud. Withers made the highest bid of 2.9 cents per square foot which amounted to $1,263.24. The only one who made any attempt to match their bid was Douglass. *There was no evidence that Douglass met the bid made by Withers.* An administrative assistant of the county manager in charge of this administrative bidding and bid award stated by affidavit to those present:

> After reading the bids, and in regard to Mr. Douglas's [sic] bid, I commented that I did not think the County would make the deed out in another person's name as was requested on the bid sheet, that it would be the Douglas's [sic] business to make any assignments or transfers after it was deeded to them by the County, *if they chose to meet the high bid of Mr. Withers.*
>
> I do not recall that Mr. Withers made any comment at the bid opening. However he came back to my office and checked the maps for parcel # 55 and then went to the clerk's office to check the title. *Mr. Withers then protested the bid of Mr. Douglas's* [sic]. [Emphasis added.]

6. At the meeting of the County Commissioners on June 5, 1979, Mr. Reed Frost, attorney for Douglass said "the property could be returned to Mr. and Mrs. Douglass."

7. On June 7, 1979, a quit claim deed was executed by San Juan County to Douglass and filed of record.

8. In Withers' Brief-In-Chief, Withers states:

> Plaintiffs submitted the highest bid. Before the deadline, Defendants Douglass submitted a matching bid .... The County nevertheless awarded the parcel to the Defendants Douglass. [Emphasis added.]

Withers admitted that Douglass submitted a matching bid. This admission was sufficient to supply the missing link in the bidding award made. At the time it was entered, Douglass was not entitled to summary judgment. Inadvertently, Douglass omitted producing evidence of compliance with the San Juan County Notice to Bidders. Inasmuch as the error was cured on appeal, a reversal on this issue would be purposeless.

A. *San Juan County was entitled to summary judgment as a matter of law.*

In its notice, San Juan County reserved the right to reject Withers' bid without incurring legal liability. Withers had read this Notice. The Notice alerted him to the bidding and the award. The Commissioners wanted to avoid any liability growing out of this public event. In the absence of any statutory or constitutional violations, they have the right to protect themselves against liability for damages. Summary judgment was properly granted San Juan County.

B. *Douglass was entitled to summary judgment as a matter of law.*

Withers' Brief-In-Chief states:

> Defendants Douglass had been the owners of the adjacent [land] to the parcel sold, but on October 21, 1977, they deeded that property to the Seventh-Day Adventist Association of Colorado (hereinafter referred to as the Church). (*Withers' Affidavit attached to Plaintiffs' Motion for Summary Judgment and deed attached hereto....* [Emphasis added.]

Withers' affidavit did not have any deed attached to it. Its motion for summary judgment did have attached to it a Memorandum Brief. *Attached to the Brief was a deed from Seventh Day Adventist to Douglass.*

Inasmuch as Withers admits that Douglass was the owner of the adjacent land, any discussion of the meaning of "owner" is superfluous.

Douglass was entitled to summary judgment as a matter of law. Withers was not.

Costs of appeal should be assessed against Withers.