1 P.3d 975

2000-NMCA-045

**Ernest D. VALENCIA and Rafelita L. Valencia, husband and wife, Plaintiffs–Appellees,**

v.

**Loretta LUNDGREN and Craig Lundgren, husband and wife, Defendants–Appellants.**

No. 20,082.

Court of Appeals of New Mexico.

May 1, 2000.

Victor A. Titus, Titus & Murphy, Farmington, for Appellees.

Todd M. Ackley, Kirtland, John C. Booth, Farmington, for Appellants.

*OPINION*

PICKARD, Chief Judge.

{1} Loretta Lundgren (Daughter) filed suit against her brother, Ernest Valencia (Son), in order to establish certain easements across his property in favor of her property. Son moved for summary judgment on the ground that he owned the property upon which Daughter resided (the Residence). Son argued he was the Residence's rightful owner pursuant to our State's recording statute because he recorded a deed purporting to transfer the Residence to him before Daughter recorded a deed purporting to transfer the Residence to her. The trial court accepted Son's argument and granted his motion for summary judgment.

{2} Daughter claims the trial court erred on the ground that Son lacked standing to invoke the recording statute. Daughter argues she foreclosed summary judgment when she raised the factual issue of whether Son acquired the Residence by gift, because persons who have not given consideration in exchange for the title to property cannot invoke the recording statute. If we reverse the trial court's decision, Daughter asks us to construe her deed and Son's deed together, uphold her claim to the Residence, and remand to the trial court for further proceedings in regard to her claim of easements appurtenant to the Residence. We reverse the trial court's decision and remand for

further proceedings consistent with this opinion.

## BACKGROUND

{3} Joe Valencia (Father) acquired three contiguous 40–acre parcels of land in northern New Mexico in the early 1940s. The parcels, which together form the shape of a backwards "L" and which are diagramed below, are located in Section 18. Township 29 North of Range 9 West. The upper right parcel (Parcel One) is the SE1/4 of the NE1/4 of Section 18. The lower right parcel (Parcel Two) is the NE1/4 of the SE1/4 of Section 18. And the lower left parcel (Parcel Three) is the NW1/4 of the SE1/4 of Section 18.

{4} On November 4, 1992. Father executed two deeds in which he transferred a substantial part of his property holdings. In the first deed (Son's deed), Father conveyed Parcel One and Parcel Two to Son, with no exceptions. In the second deed (Daughter's deed), Father conveyed to his adopted daughter (Second Daughter) a tract of land and "the house[,] being the second house East from the San Juan River." The property description contained in the second deed puts Father's conveyance to Second Daughter in Parcel Three. This deed cannot be accurate, however, because at no time was there a "second house East from the San Juan River" in Parcel Three. In fact, "the house" is actually located in Parcel Two. Second Daughter recorded her deed in 1994.

{5} Son quitclaimed his interest in Parcel One and Parcel Two to Father in December 1992. In January 1993, Father reconveyed Parcels One and Two to Son. It appears that Father and Son performed these transactions in order to accommodate Father's con-

veyance to Second Daughter because the January deed contains the same boundary descriptions as the December deed, but it excepts five parcels from the December grant. The January deed's property description puts the exceptions on Parcels One and Two. This deed cannot be accurate, however, because four of the five exceptions are actually located on Parcel Three. Son recorded the deed on the same date Father delivered it to him. Father executed another deed in March 1993, which deed purports to transfer all three parcels to Son. Father executed this deed to correct the legal description contained in the January deed; however, it lists the same five exceptions contained in the January deed.

{6} In November 1995, Father executed a deed purporting to transfer to Daughter the same property he had transferred to Second Daughter in 1992. Daughter filed suit against Son in order to establish certain easements across his property in favor of her

property in June 1998. The day after Daughter filed her complaint. Second Daughter quitclaimed her interest in Father's property to Daughter. Daughter claims ownership of the Residence through Second Daughter's quitclaim deed, which is hereinafter referred to as Daughter's deed.

## DISCUSSION

### I. RECORDING STATUTE

{7} Son and Daughter both claimed ownership of the Residence by deed at the trial court level. Son recorded his deed first. Son argued that because he recorded his deed first, he was entitled to judgment as a matter of law pursuant to our State's recording statute. The recording statute states in relevant part:

No deed, mortgage or other instrument in writing not recorded in accordance with [NMSA 1978, § ] 14–9–1 [ (1991) ] shall affect the title or rights to, in any real estate, of any purchaser, mortgagee in good faith or judgment lien creditor, without knowledge of the existence of such unrecorded instruments.

NMSA 1978, § 14–9–3 (1990). The trial court accepted Son's argument and granted his motion for summary judgment. In its summary judgment order, the trial court found: "Any deed to Loretta Valencia [Daughter], Lorena Valencia [Second Daughter], or Loretta Lundgren [Daughter] [was] filed subsequent to that granting title to Ernest Valencia and [is] therefore void and of no legal effect."

{8} Daughter claims the trial court erred as a matter of law because it applied the recording statute in total disregard to her factual averment that Son acquired his deed by gift. Daughter argues the trial court's legal analysis effectively and improperly reads the term "purchaser" out of the recording statute. Daughter relies on *Withers v. Board of County Commissioners*, 96 N.M. 71, 628 P.2d 316 (Ct.App.1981), and *Arias v. Springer*, 42 N.M. 350, 78 P.2d 153 (1938), in support of her argument.

{9} In *Withers*, we addressed the issue of whether a person had standing to invoke the recording statute after he had submitted a successful bid to purchase certain real property. *See id.* at 72, 628 P.2d at 317. Answering in the negative, we reasoned that such a person had to be, but was not, a "purchaser" within the meaning of the recording statute. *See id.* In support of our holding, we relied on our Supreme Court's decision in *Arias* for the meaning of the term "purchaser." *See id.* In *Arias*, the Supreme Court stated:

The word "purchaser" has two well-defined meanings. The common and popular meaning is that he is one who obtains title to real estate in consideration of the payment of money or its equivalent; the other is a technical meaning and includes all persons who acquire real estate otherwise than by descent. It includes acquisition by devise.

It is evident that the word is used in the statute in its popular sense. . . . The object of the statute is to prevent injustice by protecting those who, without knowledge of infirmities in the title, invest money in property or mortgage loans; and those who have acquired judgment liens without such knowledge.

*Id.* at 359, 78 P.2d at 159 (citations omitted).

{10} The import of *Withers* and *Arias* is that a person can qualify as a purchaser under the recording statute if and only if he has invested money or money's worth in consideration for the title to real property. *See Withers*, 96 N.M. at 72, 628 P.2d at 317 ("[T]he clear and consistent reasoning of New Mexico case law ... holds that the object of the recording statute is to protect those who invest money in property ... without knowledge of infirmities in title."). If a person has not made such an investment, that person cannot invoke the recording statute to invalidate a conflicting deed irrespective of the fact that the person recorded the deed first. *See id.* We hold that the trial court therefore committed reversible error by failing to consider the issue of whether Son obtained title to the Residence by gift. *See Garcia v. Sanchez*, 108 N.M. 388, 395, 772 P.2d 1311, 1318 (Ct.App. 1989) (ruling that case may be remanded for application of correct principles of law when decision is based upon an error of law).

{11} The record indicates that Daughter properly raised this issue in the trial court. Daughter submitted an affidavit supporting her factual contention that Son did not give consideration for the Residence. In her affidavit. Daughter stated that despite her comprehensive review of Father's financial records, she had not discovered any receipt or record indicating Father had received money in exchange for deeding Parcels One, Two, and Three to his children. She alleges her affidavit draws credibility from Daughter's intimate knowledge of Father's financial affairs when she lived with and cared for Father in his residence until he died. Daughter points out that neither Son nor Son's attorney submitted any evidence disputing the triable issue raised in her affidavit. In fact, Son's attorney appears to have conceded the issue at the summary judgment hearing. Daughter's unrebutted affidavit forecloses summary judgment. *See Pharmaseal Lab., Inc. v. Goffe*, 90 N.M. 753, 756, 568 P.2d 589, 592 (1977) (ruling that summary judgment is foreclosed when the record discloses the existence of a substantial dispute concerning a material factual issue).

{12} On remand, the trial court is instructed to hear evidence and enter findings on the issue of whether Son acquired the Residence by gift. If the trial court finds that Son did not give Father consideration in exchange for the title to the Residence, it shall, for the reasons stated below, construe Son's deed and Daughter's deed together.

## II. DEED CONSTRUCTION

{13} Daughter claims her deed and Son's deed should be construed together to give effect to both gifts insofar as possible because Father executed the conflicting deeds as part of a single transaction. We agree. The general rule in deed construction is that the grantor's intent is to be ascertained from the language employed in the deed or deeds, viewed in light of the surrounding circumstances. *See Hyder v. Brenton*, 93 N.M. 378, 381, 600 P.2d 830, 833 (Ct.App.1979). A court should not look beyond the language in the deeds to determine the grantor's intent if the deeds are unambiguous. *See Sanders v. Lutz*, 109 N.M. 193, 195–96, 784 P.2d 12, 14–15 (1989). However, when two deeds executed as part of substantially one transaction are ambiguous when compared with one another, a court may look beyond the four corners of the deeds in order to ascertain the grantor's intent. *See Camino Sin Pasada Neighborhood Ass'n v. Rockstroh*, 119 N.M. 212, 214–15, 889 P.2d 247, 249–50 (Ct.App.1994) (applying rule that where deeds are ambiguous, extrinsic evidence can be used to determine grantor intent); *Thompson v. Schlittenhart*, 47 Wash. App. 209, 734 P.2d 48, 50 (1987).

{14} The original deeds to the children, which Father executed on the same day, are ambiguous because they conflict with one another. In particular, Son's deed gives him Parcel One and Parcel Two with no exceptions and yet Daughter's deed gives her a house that appears to be located on Parcel Two. In addition, there is other evidence in the record supporting Daughter's contention that the overlap in the original deeds is merely a mistake and that Father really intended to convey the Residence to Second Daughter, and not to Son. That evidence is Father's last will and testament.

{15} In his will, Father stated that if his wife predeceased him, which she did, he wanted Second Daughter to take the "family residence and the land on which it is situate[d]." Father specifically described Second Daughter's bequest as follows:

A tract of land approximately 150 feet by 250 feet in dimensions, being 250 feet from East to West and 150 feet from North to South, and the house being the second house East from the San Juan River;

Located at the Northwest Quarter of the Southeast Quarter (NW[1]/4 SE[1]/4) of Section Eighteen (18), Township Twenty-nine (29) North, Range Nine (9) West, N.M.P.M., San Juan County, New Mexico; TOGETHER WITH the water rights appurtenant thereto and the mineral rights appurtenant thereto.

{16} Father's bequest to Second Daughter contains the same mistaken description of the Residence as the descriptions of the Residence contained in the later deeds Father delivered to Second Daughter and Daughter. The property descriptions in Father's will

and Daughter's deed put Father's bequest/gift in Parcel Three. And yet, it is indisputable that the family residence—i.e., the Residence—is actually located in Parcel Two and that there is no "second house East of the San Juan River" in Parcel Three.

▆ {17} It appears that Father and Son attempted to correct the apparent overlap in Son's deed and Daughter's deed. In particular. Son quitclaimed his interest in Parcel One and Parcel Two to Father in December 1992. Less than one month later. Father turned around and reconveyed Parcels One and Two to Son; however, this time he excepted five parcels from the grant. It is plausible that Father and Son performed these transactions in order to accommodate Father's conveyance to Second Daughter. However, we do not resolve this issue on appeal because, as Son and Daughter admit, several triable issues of material fact remain unresolved.

{18} On remand, if the trial court finds that Son is not a purchaser, the trial court is instructed to construe the deeds together in light of the surrounding circumstances to best ascertain Father's intent. The trial court shall base its determination, not upon which donee recorded his or her deed first, but upon what property interests Father intended to convey to Son and Second Daughter when he executed the deeds on November 4, 1992. *See Armijo v. Armijo,* 4 N.M.

57, 65, 13 P. 92, 95 (1887) (stating that an unrecorded deed is good, and passes the title to property, as against the grantor and the grantor's heirs and devisees). The trial court may aid its determination by considering, among other things, (1) whether Father's multiple conveyances, along with his last will and testament, support the conclusion that he mistakenly transposed Parcel Two's property description and Parcel Three's property description in the deeds and (2) whether Father's second deed to Son, which was executed in January 1993, supports the conclusion that Father and Son attempted to correct the apparent overlap in Son's deed and Daughter's deed by putting his conveyance to Second Daughter within one of the second deed's five exceptions.

**CONCLUSION**

{19} For the reasons stated, we reverse and remand for further proceedings consistent with this opinion.

{20} **IT IS SO ORDERED.**

BOSSON and WECHSLER, JJ., concur.