This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**G. RUSSELL LEONARD and**
**DEBRA LEONARD, husband and wife,**

Plaintiffs/Counter-Defendants-Appellants,

v.                                             NO. 30,566

**GERALD LEONARD and SUZANNE**
**LEONARD, husband and wife**,

Defendants/Counter-Claimants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
**Jane Shuler Gray, District Judge**

Tucker Law Firm, P.C.
Steven L. Tucker
Santa Fe, NM

Phil Brewer
Roswell, NM

for Appellants

Hinkle, Hensley, Shanor & Martin, L.L.P.
Mary Lynn Bogle
Roswell, NM

for Appellees

**MEMORANDUM OPINION**

**HANISEE, Judge.**

{1}     Plaintiffs appeal the district court's judgment quieting title to the Leonard Ranch (the Ranch) in favor of Defendants. Following a bench trial, the district court concluded that Plaintiffs granted Defendants a one-half interest in the Ranch in a 1995 quitclaim deed. On appeal, Plaintiffs contend that the district court erred in determining that the delivery of the quitclaim deed constituted a valid and effective present conveyance of absolute title to an undivided one-half interest in the Ranch. We conclude that the district court did not err, and affirm.

**I.     BACKGROUND**

{2}     The Ranch consists of approximately 17,000 acres of land located within Chaves and Lincoln Counties. Defendant Gerald Leonard (Gerald) and his first wife Barbara Leonard (Barbara) acquired the Ranch in 1973. Gerald and Barbara divorced some time prior to 1995, each retaining a one-half interest in the Ranch. Gerald is now married to Suzanne Leonard (Suzanne), who is also a Defendant in this case. The instant dispute arose pursuant to a sequence of events associated with Barbara's sale of her one-half interest in the Ranch in 1995 to their son, Plaintiff G. Russell Leonard (Russell), and his wife, Plaintiff Debra Leonard (Debra).

{3}     To effectuate Barbara's sale to Plaintiffs, Russell requested that Gerald sign a

1

warranty deed transferring his separate, undivided one-half interest in the Ranch to Plaintiffs, in order to ensure that title to Barbara's one-half interest passed smoothly to Plaintiffs. In return, Plaintiffs agreed to quit claim Gerald's one-half interest in the property back to Gerald. In accordance with Russell's plan, Gerald executed a warranty deed in favor of Plaintiffs as agreed. Later the same day, Russell handed Gerald the quitclaim deed to Gerald's one-half interest, signed by Plaintiffs, in a sealed envelope. The quitclaim deed stated that Russell and Debra, "for consideration paid, quit claim 1/2 interest [to] Gerald Leonard[.]" Russell had written a note by hand beneath this language, stating, "To later negotiate to an extended agreement to pay Gerald Leonard [$]15,000 a year untill [sic] said amount is paid and quitclaim deed is distroyed [sic]."

{4} Nearly eleven years later, Plaintiffs initiated the present litigation by filing a complaint to quiet title in 2006. In their complaint, Plaintiffs asserted that they own in fee simple all lands which comprise the Ranch, and that whatever interest Defendants possessed was "inferior in law and in equity" to Plaintiffs' interests. Plaintiffs contend that based on conversations between Russell and Gerald and the resulting deeds, Gerald sold his interest to Plaintiffs. Defendants responded to the complaint asserting their one-half interest in the land, and ultimately filed a second amended answer and counterclaim for quiet title, which additionally alleged a series

2

of separate torts perpetrated on Defendants by Plaintiffs. The main issue during the bench trial at which Gerald, Russell, Barbara, Debra and Suzanne all testified was the validity and significance of the quitclaim deed, signed by Russell and Debra, and provided to Gerald, purporting to return to Gerald his one-half interest in the Ranch.

{5} As Defendants highlight in their brief, the district court found that, "[p]ut in the best light in favor of [Russell], the terms of the quitclaim deed express an intent to later enter into an agreement for the sale/purchase of [Gerald's] interest in the [R]anch—and nothing more." The district court determined that neither the conversation between Russell and Gerald, nor the warranty deed it generated, was intended to be a sale of Gerald's interest in the property and that no agreement for the sale of Gerald's interest was ever negotiated. The court found that Gerald agreed to sign the warranty deed only on the condition that Russell and Debra execute a quitclaim deed immediately following the sale to make clear and known the return to Gerald of Gerald's own undivided one-half interest in the Ranch. According to the district court's findings, Gerald believed that the process of having him and Barbara execute warranty deeds and then having Gerald's interest quit-claimed back to him assisted with the sale and made it clear that he retained his undivided one-half interest in the Ranch. The court explained that "[Gerald] did not sell, offer to sell, or agree to sell to [Russell] and Debra . . . in 1994, 1995, or any other time, his undivided [one-

3

half] interest in the [] Ranch." The district court stated that "[c]onsistent[] with the intent of the parties, the quitclaim deed at issue constituted a present conveyance of an interest in [the Ranch], with all the rights and privileges associated therewith."

{6}     With regard to the handwritten language of the quitclaim deed, the district court specifically stated that it "was unilaterally written by [Russell], without authority or knowledge of [Gerald] and is not binding on [Gerald] and Suzanne Leonard." The court determined that this handwritten portion of the deed "was, at most, a condition or exception to the rights necessarily inherently attendant to the transfer of title, providing that the parties could 'later negotiate' a contract for the sale of the [one-half] interest [in the Ranch and that t]he condition of 'later' negotiations has never arisen." In addition to the foregoing, the district court found that Gerald was unaware of Russell's handwritten addition to the quitclaim deed because he did not open the envelope to verify the deed's content since "he loved" and had "no reason to distrust" Russell.

{7}     The district court thus quieted title to a one-half interest in the Ranch in favor of Defendants, ordered a partition of Defendants' one-half interest, awarded judgment in favor of Defendants as to each counter-claim asserted, and awarded fees to Defendants. Plaintiffs' present appeal followed.

**II.     DISCUSSION**

4

**{8}** Plaintiffs maintain that the quitclaim deed signed by Plaintiffs transferring a one-half interest in the land back to Gerald was not validly delivered as a matter of law because at the time of transfer, Russell lacked the present intent to "irrevocably and irretrievably" divest himself of title to the land. In making these arguments, Plaintiffs challenge the district court's findings and conclusions with regard to its construction of the deed in ascertaining Plaintiffs' intent and concluding there was valid delivery.

**{9}** "Because the question of whether [the grantor] intended to deliver the deed is an issue of fact, we disturb the [district] court's relevant findings and conclusions only if they are unsupported by substantial evidence." *Blancett v. Blancett*, 2004-NMSC-038, ¶ 20, 136 N.M. 573, 102 P.3d 640. "Substantial evidence is such relevant evidence that a reasonable mind would find adequate to support a conclusion." *Landavazo v. Sanchez*, 111 N.M. 137, 138, 802 P.2d 1283, 1284 (1990). In reviewing a substantial evidence claim, "[t]he question is not whether substantial evidence exists to support the opposite result, but rather whether such evidence supports the result reached." *Las Cruces Prof'l Fire Fighters v. City of Las Cruces*, 1997-NMCA-044, ¶ 12, 123 N.M. 329, 940 P.2d 177. "Additionally[,] we will not reweigh the evidence nor substitute our judgment for that of the fact finder," *id.*, except "[w]here an issue to be determined rests upon the interpretation of

5

documentary evidence, an appellate court is in as good a position as the trial court to determine the facts and draw its own conclusions." *Maestas v. Martinez*, 107 N.M. 91, 93, 752 P.2d 1107, 1109 (Ct. App. 1988). Thus, we review documentary evidence de novo. *Id.*

{10} "An effective legal delivery of a deed requires (1) intent by the grantor to make a present transfer and (2) a transfer of dominion and control." *Blancett*, 2004-NMSC-038, ¶ 7. "There is no legal delivery, even where a deed has been physically transferred, when the evidence shows that there was no present intent on the part of the grantor to divest himself of title to the land." *Den-Gar Enters. v. Romero*, 94 N.M. 425, 428, 611 P.2d 1119, 1122 (Ct. App. 1980). "[T]he grantor's present intent must be to pass his complete title to the grantee and divest himself of all title; otherwise the purported deed is not valid or effective." *Id.* "The general rule in deed construction is that the grantor's intent is to be ascertained from the language employed in the deed or deeds, viewed in light of the surrounding circumstances." *Valencia v. Lundgren*, 2000-NMCA-045, ¶ 13, 129 N.M. 57, 1 P.3d 975; *Blancett*, 2004-NMSC-038, ¶ 7 (stating that the grantor's intent may also "be determined from words, actions or surrounding circumstances during, preceding or following the execution of a deed"). "Courts will construe a deed in such a manner that will uphold the validity of the conveyance, if possible." *Vigil v. Sandoval*, 106 N.M. 233, 235,

741 P.2d 836, 838 (Ct. App. 1987).

{11} Plaintiffs argue that the district court erred in concluding that the deed was valid, asserting that the language Russell added in his handwritten note on the deed rendered the transaction an invalid or incomplete conveyance, and maintaining that the deed "had no immediate effect in 1995." We disagree and conclude that the district court's findings and conclusions are supported by substantial evidence within the record.

{12} First and foremost, the handwritten language of the deed, which Plaintiffs argue renders the deed invalid, does not contradict the deed's immediate quitclaim intent. Russell's handwritten note states, "To later negotiate to an extended agreement to pay Gerald Leonard [$]15,000 a year untill [sic] said amount is paid and quitclaim deed is distroyed [sic]." This language fails to indicate that the transfer was conditioned on "the happening of a future condition, *viz.*, some calamity befalling Russell[,]" as Plaintiffs contend. At most, it indicates Russell's hope to negotiate a future sale pursuant to which he can acquire full interest in the Ranch. Nonetheless, we conclude that such a later purchase, even had it occurred, would not constitute a "recall" of the deed. Instead, were it ever completed, it would simply be a separate and independent transfer of the property. The fact that a party effects a completed transfer of property with the hope that he might one day be in a position to repurchase the property does

7

not in any way render invalid the original delivery of the deed. Moreover, had Russell not intended for the quitclaim deed to be effective and valid, there would have been no need for him to purchase Gerald's half interest that day or any day in the future.

{13}    Viewed in light of the surrounding circumstances, the deed's language demonstrated Russell's present intent, as the grantor, to divest himself of title to the land. Gerald testified that he was insistent that the quitclaim deed be returned to him on the same day he signed and provided the warranty deed to Russell. On the day of the sale of Barbara's one-half interest to Plaintiffs, Gerald reiterated that "I've had experience with family affairs before . . . I'm going to give you a deed for my half of the [R]anch and you're going to give it back to me today." Furthermore, Russell admitted to signing and writing upon the quitclaim deed, neglecting to include the alleged price ($175,000) which he testified he agreed upon with Gerald for the sale of Gerald's portion of the Ranch, and never having paid Gerald any of the amount of the money supposedly agreed to in order for Russell to acquire the entire Ranch.

{14}    Although the note Russell wrote on the deed indicated that he would have liked, at some future point, to negotiate a purchase of Gerald's one-half interest in the property, the evidence of the parties' conduct before and after the delivery of the deed supports the district court's determination that no such negotiations were ever undertaken, which could be interpreted by the fact finder to explain why Russell never

8

attempted to make, or otherwise made payments to, Gerald. The language of the deed—both the quitclaim conveyance and the handwritten addition by Russell—fails to establish any present or future sale, terms of such a sale, or agreement of the parties for there to definitively be any sale to Russell of Gerald's one-half undivided interest in the Ranch.

**{15}** Finally, even if Plaintiffs' argument could be read in such a manner as to maintain a conditional delivery that was unsatisfied by Gerald, it appears that Russell did not present such a theory at trial, and we decline to permit him to put forth such a theory on appeal, since Defendants did not have the opportunity to make any arguments in law or equity regarding why such a provision should not be enforced in the context of a quitclaim deed. *Gerke v. Romero*, 2010-NMCA-060, ¶ 18, 148 N.M. 367, 237 P.3d 111 (stating that one of the primary purposes of preservation is "to allow the opposing party a fair opportunity to respond to the claim of error and to show why the district court should rule against that claim" (internal quotation marks and citation omitted)).

**{16}** Although we recognize that Russell presented evidence that would support a different version of events and therefore another interpretation of the terms of the deed, "[t]he question is not whether substantial evidence exists to support the opposite result, but rather whether such evidence supports the result reached." *Las Cruces*

*Prof'l Fire Fighters,* 1997-NMCA-044, ¶ 12. Here, based on the language of the deed and the extrinsic evidence before it, the district court was well within its fact finding authority to determine that the deed was intended to constitute a present conveyance to Gerald that was not dependent on future negotiations regarding the possibility of any sale of the property conveyed by the deed. Abundant evidence, including the text of the deed, Gerald's testimony, and the circumstances surrounding the sale of Barbara's property to Russell support the district court's conclusion that such was in fact precisely what the parties bargained for—a successful sale of Barbara's interest to Russell and an ensuing tenancy in common shared by the parties. Under the express language of the deed and the district court's resolution in favor of Defendants of the testimony at trial (which we do not reweigh on appeal), we conclude that the district court's findings and conclusions were supported by substantial evidence.

## III.   CONCLUSION

{17}    For the reasons set forth above, we will not disturb the factual findings or legal conclusions of the district court. We affirm.

{18}    **IT IS SO ORDERED.**

                                     _____

                                     **J. MILES HANISEE, Judge**

**WE CONCUR**:

_____

**MICHAEL D. BUSTAMANTE, Judge**

_____

**LINDA M. VANZI, Judge**